NICHOLLS, J.
In tlie petition of the •state of Louisiana, plaintiff, on the relation of Walter Guión, Attorney General, it is alleged that:
The “Board of Levee Commissioners of the Orleans Levee District” is a body politic, with corporate powers created under the terms of Act No. 93, p. 95, of the General Assembly of the State of Louisiana for the .year 1890, and charged with the construction, repair, control, and maintenance of all levees in the Orleans levee district; said district comprising the whole of the parish of Orleans. That the domicile of said board is in the city of Nev/ Orleans, where, by the terms of said creative aer, it is made suable by service of process upon its president. That said board is a public board created to discharge a governmental function, and as to all of its functions is simply an instrumentality of the state government.
That by reason of the terms of Aqt No. ■93, p. 95, of 1890, aforesaid, the act creating .said board, as well as by reason of the provisions of other acts of the General Assembly of the state of Louisiana, and particularly of Acts Nos. 14 and 110, pp. 15, 171, of 1898, and of article 239 of the Constitution •of 1898 of the State of Louisiana, and by further reason of the fact that said board is .a public board, organized and created solely for the purpose of discharging as an instrumentality of the state government, a purely governmental function, the state of Louisiana is and has been constituted the fiscal agent of said board, and the State Treasurer the proper and sole lawful depositary of all funds dedicated to the- work to perform which said board was created, whether said funds result from taxation, or from the issue and sale of bonds authorized by law, or otherwise, and that said board has no legal right to fail or refuse to deposit all of said funds from the State Treasurer or to withdraw said funds from the State Treasurer except for the purpose of meeting, and in amounts sufficient to meet, its current expenses and liabilities in the prosecution of the work with which it is charged by the law of its creation. That by the terms of Act No. 25 of the General Assembly of the State of Louisiana for the year 1908 the said board was authorized to make and issue, under the terms and conditions in said act provided, bonds in an amount not exceeding $3,000,-000. That said board was by the terms of said act further authorized to exchange for the then outstanding bonds of said board, on a basis of par and accrued interest, so many of said new bonds as might be requirer for such purpose, and the balance of said new bonds said board was authorized to sell at not less than par and accrued interest; the proceeds of said sale to be expended by said board for the retirement by payment of certificates issued for property previously appropriated for levee purposes, for enlarging and strengthening the levee system in said Orleans levee district.
That, acting under the authority of, and pursuant to, said act No. 25, p. 24, of 1908, said board has issued its bonds to the amount of $3,000,000. That of said amount it has delivered to the State Treasurer bonds to the amount of $244,000 for the purpose of retiring its outstanding bonds for a like amount issued under and by virtue of the authority of previous acts of the General Assembly of the State of Louisiana, and that it has sold the remainder of said bonds to the amount of $2,756,000. That of this last-named amount its bonds to the amount of $2,000,000 have been delivered and the proceeds of the *449 sale thereof received by the said board, and that the balance of the said bonds will be delivered, and the proceeds of the sale thereof received, by said board on or about the 1st day of May, 1909.
That, during the month of February, 1909, said board advertised for bids from banks In the city of New Orleans to become the fiscal agent of said board for the year beginning March 1, 1909, in accordance with the terms of Act No. 23, p. 25, of the Extra Session of the General Assembly of the State of Louisiana for the year 1907, and having accepted the bid of the Interstate Trust &■ Banking Company of the said city of New Orleans, to pay interest at the rate of 3Vic per cent, per annum upon the daily balances of said board, did subsequently, on the 6th day of March, 1909, by act before E. P. Cousin, notary public, make and enter into a contract with the said Interstate Trust & Banking Company and the Fidelity & Deposit Company of Maryland, whereby in consideration of the obligations assumed by the said Interstate Trust & Banking Company to accept the fiscal agency of the said board, and to pay to said board interest on its daily balance at the rate of 3 Vis per cent, per annum, and of the agreement of said Fidelity & Deposit Company of Maryland to bind and obligate itself unto the said board, in the sum of $100,000 as surety for said Interstate Trust & Banking Company, for the safe-keeping and return of such deposits as might be made with the said Interstate Trust & Banking Company by said board, and for the payment of the interest thereon, as hereinabove set forth, said board did constitute and appoint said Interstate Trust & Banking Company its fiscal agent for the year following March 1, 1909, and agreed that, as such fiscal agent, said Interstate Trust & Banking Company should be entitled to the deposit of all of the funds of the said board during said term.
That thereafter said board deposited with the Interstate Trust & Banking Company, In accordance with the terms of said contract, the balance then remaining of the proceeds of the bonds sold as hereinabove recited, and, of the proceeds of said sale of bonds, the said board now has on deposit with the said Interstate Trust & Banking Company the sum of $261,023.36.
That, except in so far as may concern funds withdrawn from the state treasury in pursuance of law to meet current expenses and liabilities, the contract aforesaid, between the said board and the said Interstate Trust & Banking Company, is null, void, and of no effect; that it was and is the duty of said board to pay into the state treasury the proceeds of the sale of the bonds authorized as aforesaid by Act No. 25 of 1908, the said proceeds to be thereafter withdrawn from said State Treasurer by said board in accordance with law as and when same may be needed for the purpose for which said board is authorized to expend the same. That the said board has neglected and refused, and still neglects and refuses, to pay the said proceeds into the state treasury, notwithstanding demand has been legally made upon it to do so by the proper authorities, and it is necessary and proper that the court should issue to said board, through its president, a writ of mandamus commanding and directing that the fund representing the proceeds of the sale of the said bonds be forthwith paid over to the State Treasurer and into the state treasury, to be there held to the credit of said board in accordance with law and particularly in accordance with Act No. 93 of 1890 and the provisions of Acts Nos. 14 and 116 of the General Assembly of the State of Louisiana, approved June 17, 1898, and July 13, 1898, respectively, and of article 239 of the Constitution of the State of Louisiana.
Wherefore, the premises and the annexed affidavit considered, relator prays that an *451 alternative writ of mandamus may issue herein directed to the Board of Levee Commissioners of the Orleans Levee District commanding said Board of Levee Commissioners of the Orleans Levee District to immediately transfer and pay into the State Treasury the proceeds of the sale of the bonds issued and sold by said board under the terms of Act No. 25 of 1908, as well as all other moneys belonging to said board, or to show cause to the contrary on such a day and at such an hour as may be named by the court, and upon such hearing relator prays that said alternative writ may be made peremptory, and for costs, and for general relief.
On reading this petition the court ordered an alternative writ of mandamus to issue as prayed for.
The board of commissioners excepted that the petition filed disclosed no cause of action. Under reservation of its exception, defendant answered pleading first a general denial. It admitted that it was a body politic created with corporate powers by Act No. 93 of the General Assembly of the State of Louisiana, for the year 1890, and that it was charged with the construction, repair, control, and maintenance of all levees within the New Orleans levee district.
Further averring, it specially averred: That under and by virtue of Act No. 25 of the General Assembly of the State of Louisiana for the year 1908 respondent was authorized to make and issue under the terms thereof bonds in an amount not to exceed $3,000,000 ; to exchange for then outstanding bonds of respondent so many of said new bonds as might be required for such purpose; and to sell at not less than par and accrued interest the balance thereof for the purposes set forth in ^aid act.. •
That acting under and by virtue of said Act No, 25 of 1908 respondent had sold bonds to the amopnt of $2,756,000. That part of the proceeds thereof has been turned over and delivered into the physical possession of respondent for expenditures as provided by the terms of said act, and the balance of the proceeds of sale thereof were to be turned over and delivered to respondent o:i or about the 1st of May, 1909, to be by it expended for like purposes.
That the General Assembly of the State of Louisiana at its extra session held in the year 1907, passed Act No. 23 of the Acts of the General Assembly of said year, and that thereunder it was made the imperative duty of every public board created by special or general act of the General Assembly of this state to deposit all public funds “belonging to” or “received by it,” except such only as. “then held in the custody or possession of the State Treasurer,” with a fiscal agent paying interest on deposits. That thereunder it -was made the duty of all such public bodies to advertise for bids from such bank or banks as might be within the territorial jurisdiction of such public boards inviting bids as to the quantum of interest such banks woujd piay upon the daily balances of the deposits so to be made and upon the giving of satisfactory security as provided under the terms of said act. That it was a public board created by Act No. 93 of the General Assembly of the State of Louisiana for the year 1890, and that as such it was. amenable to the provisions of Act No. 23 of the Extra Session of 1907. That in consonance therewith, and agreeably thereto, it duly advertised for the reception, of bids for interest on the deposits to be derived from the sale of the bonds authorized to be by it issued under the terms and provisions of Act No. 25 of the General Assembly of 1908, a copy of which advertisement it annexed and made part of its answer.
That after due and legal proceedings, following in all respects the terms and pro-, visions of said Act No. 23 of 1907, respond *453 ent adjudicated the deposits of the avails of said bonds to the Interstate Trust & Banking Company for and in consideration of their obligation to pay to respondent interest on the daily average of the balance carried at the rate of 3Vic per cent, interest per annum. That accordingly it did, on the Gth day of March, 1909, by act before Edward P. Cousin, notary public, enter into a notarial contract evidencing said bid and adjudication with said Interstate Trust & Banking Company and the Fidelity & Deposit Company of Maryland, surety of said banking company, as would more fully and at large appear by reference to a certified copy of said act annexed and made part of its answer.
Respondent denied that the avails or proceeds of the sale of the bonds so issued under and by virtue of the provisions of Act No. 25 of 1008 ever went into the custody or possession of the State Treasurer of Louisiana, or that it was ever contemplated that it should go into his custody or possession. That the same Legislature of the year 1908 that authorized respondent to issue bonds under provisions of Act 25 of that year, passed Act No. 282, p. 414, of the Sessions Acts of 190S amending Act No. 23 of 1907, above referred to, to the extent only of making obligatory upon respondent as one of said public boards therein referred to, to make deposits of such funds not in the possession or under the control of the State. Treasurer weekly in the fiscal agent or depositary selected by respondent under and by virtue of the terms of Act No. 23 of 1907, and thereby established contemporaneously exposition of said Act No. 23 of 1907, and wrote it into Act No. 25 of 1908, authorizing the aforesaid bond issue.
Respondent specially denied that there was anything in Act No. 93 of 1890 creating respondent, or any other law which provides that any funds arising from the sale of bonds should be deposited with the State Treasurer; but, on the contrary, it averred: That section 5 of Act No. 93 of 1890 specially and clearly provides that only the funds arising from the district levee tax of one mill authorized to be issued under and by virtue of said section shall be collected by the state tax collector of this parish in the same manner as state taxes were collected, and that said state tax collector was directed to collect and transmit the funds arising therefrom to the State Treasurer. That said section 5 was specific only as to the funds arising from said tax, and referred to no other funds, and that the application of Act No. 24 of 1907 alleged by relator to concern funds of respondent board sufficient in amount to only meet its current expenses and liabilities was justified neither by the phraseology of Act No. 93 of 1890, Act No. 23 of 1907, nor Act No. 25 of 1908.
That the purpose of Act No. 23 of 1907 was to provide an additional fund arising from the interest on deposit to be attributable to and appropriated directly by the various public boards therein referred to, in order that said interest so obtained might be expended in the prosecution of the public work enjoined upon respondent board as one of said boards referred to in said act. That it was contemplated that said funds, as stated in said act, “belonged to and were received by” respondent board and not to be held within the custody or possession of the State Treasurer, in order that respondent board might have the advantage of the interest so obtained which otherwise will be deposited at the capital of the state of Louisiana and be subjected to the control of the State Board of Liquidation. That the interest so earned would go to the general credit of the state of Louisiana, and thus be lost for availability to the purposes of respondent board. That this was not the intention of the Legislature in the passage of Act No. *455 23 of 1907 or Act No. 25 of 1908, and would in a large measure defeat the very purposes of the act.
That said Act No. 23 of 1907 repealed all other acts on the same subject-matter in conflict therewith and was the latest legislation upon the subject. That respondent in view thereof complied with its requirements in word and tenor, and its action thereunder was legal and binding and should be so decreed.
In view of the premises respondent prayed that the alternative writs of mandamus herein sued for be discharged, and that this honorable court do decree that the proceedings taken by respondent board under the provisions of Act No. 23 of 1907, and the notarial contract entered into between respondent and said Interstate Trust & Banking Company, on the 6th day of March, 1909, before Edward P. Cousin, notary public, be confirmed, ratified, and upheld, and that respondent be hence dismissed with its costs, and as in duty bound it ever prayed.
The Interstate Trust & Banking Company intervened in the case. In its petition of intervention it alleged: That it was a corporation organized under the laws of the state of Louisiana, regulating the organization of corporations for the purpose of conducting the business of banking, and is and has been for many years conducting a general banking business with its office and domicile in the city of New Orleans. That during the month of February, 1909, the defendant in this case, the Board of Levee Commissioners of the Orleans Levee District, a body politic with corporate powers created under the terms of Act No. 93 of the General Assembly of the State of Louisiana for the year 1890, and by said act charged with the construction, repair, control, and maintenance of all levees in the Orleans levee district, said district comprising the whole of the parish of Orleans, advertised for bids from banks in the city of New Orleans to become the fiscal agent of said board for the year succeeding March 1, 1909; said advertisement having been made in pursuance of and in accordance with Act No. 23 of the Extra Session of the State of Louisiana for the year 1907.
That the said advertisement invited proposals from the various banks of the city as to the rate of interest they would pay during the stipulated term upon the daily balances which might stand to the credit of the said board during said term, in consideration of receiving the deposit during the said term of all of the funds of which said defendant had the management and control, and stipulated that the successful bidder should execute a bond in favor of said defendant in accordance with the provisions of said act in the sum of $100,000; the said defendant specially reserving the right to reject any and all bids. That in response to said advertisement intervener submitted a bid for said deposit, by the terms of which it offered and proposed to pay interest at the rate of 3Vio per cent, per annum on the daily balances of said defendant and otherwise to comply with the terms and conditions of said advertisement.
That, intervener’s said bid being the best submitted, the same was at a special meeting of said defendant board held on the 1st day of March, 1909, duly accepted, and intervener was on the same day notified in writing of said acceptance by said defendant acting through its president, Jules O. Keonig.
That intervener thereupon arranged with the Fidelity & Deposit Company of Maryland, a corporation duly authorized to conduct in this state the business of signing bonds as surety, in consideration of a premium of $500, to be paid by intervener, to sign as surety for intervener the bond for $100,600 in favor of the defendant required *457 under the terms of the advertisement hereinabove referred to and Act No. 23 of the Extra Session of the General Assembly of the State of Louisiana for the year 1907.
That thereafter, to wit, on the 6th day of March, 1909,' in confirmation of intervener’s bid and its acceptance by the defendant as aforesaid, there was executed before Edward P. Cousin, notary, a formal contract by and between the said defendant intervener and the Fidelity & Deposit Company of Maryland, by the terms of which; in consideration of the obligation assumed by intervener to accept the fiscal agency of said defendant and to pay to said defendant interest on its daily balances at the rate of 3Vig per cent, per annum, and of the agreement by said Fidelity & Deposit Company of Maryland to bind and obligate itself unto the said defendant in the sum of $100,000. as surety of intervener for the safe-keeping and return of such deposits as might be made with intervener by said defendant, and for the payment of interest thereon as hereinabove set forth, said defendant did constitute and appoint intervener its fiscal agent for the year succeeding March 1, 1909, and did agree that as such fiscal agent intervener should be entitled to the deposit of all the funds of said defendant during said term.
That prior to the making of the said contract with intervener the defendant had been authorized by the terms of Act No. 25 of the General Assembly of the State of Louisiana for the year 1908 to make and issue under the terms and conditions in said act provided bonds in an amount not exceeding $3,000,000. That said defendant was by the terms of said act further authorized to exchange for the then outstanding bonds of said defendant on a basis of par and accrued interest so many of said new bonds as might be required for such purpose, and the balance of said bonds said defendant was authorized to sell at not less than par and accrued interest, and the said defendant was authorized to expend the proceeds of the sale of said bonds for the retirement by payment of certificates issued for property previously appropriated for levee purposes for the purchase of property necessary for such purpose and for enlarging and strengthening the levee system in said Orleans levee district.
That, acting under the authority of and pursuant to said Act No. 25 of 1908, said defendant had, at the time the contract with intervener aforesaid was made, sold bonds to the amount of $2,756,000. That of this amount $2,000,000 had been delivered, and the proceeds of the sale thereof received by said defendant, and that the proceeds of the balance of said bonds will be received by said defendant on or about the 1st of May, 1909.
That in accordance with the terms and conditions of its contract of March 6th, aforesaid, with intervener, said defendant immediately thereafter deposited with intervener the balance of the proceeds of the sale of said bonds which then remained unexpended in defendant’s possession and control, and of the deposit so made there then remained with intervener on deposit in accordance with the terms of the s^id contract the sum of $261,023.36, as alleged in the petition of relator herein.
Intervener specially denied that it was the duty of the defendant, as alleged by relator in his petition, to deposit in the state treasury said fund, or any funds which may hereafter come into its possession as the proceeds of the sale of bonds not yet paid for, or that relator was entitled to the mandamus applied for, in this case, but averred, on the contrary, that it was the duty of defendant as to said fund and as to the fund which will hereafter be received by it as the proceeds of the sale of *459 bonds not yet paid for to deposit the same with intervener as its fiscal agent duly selected as aforesaid in accordance with the terms of Act No. 23 of the Extra Session of 1907.
Intervener further averred that, if this honorable court should grant the relief prayed for by relator herein, it would constitute a violation and an impairment of intervener’s contract with the defendant made upon a valid consideration and under express sanction of law, to intervener’s great loss and injury.
In view of the premises, intervener prayed for leave to file this petition of intervention, that the relator and the defendant be cited in accordance with law to answer same, and that after due proceedings there be judgment rendered in intervener’s favor and against the relator, rejecting relator’s demand and dismissing his suit, with costs. Intervener further prayed for all such general and equitable relief as it may be entitled to in the premises.
The plaintiffs answered the petition of intervention pleading first a general denial. Further answering, it admitted: That intervener was a corporation fully organized under the laws of this state for the purpose of conducting the business of banking; that it had its office and domicile in the city of New Orleans; that during the month of February, 1909, defendant, the Board of Levee Commissioners of the Orleans Levee District, advertised for bids from banks in the city of New Orleans to become the fiscal agent of said Orleans levee board for the year succeeding the 1st of March, 1909; that said advertisement invited proposals from said various banks of the city of New Orleans as to the rate of interest to be paid by them during a stipulated term upon daily balances to the credit of said board in consideration of receiving the ' deposit during the said term of all of the funds belonging to said Orleans levee board and of which it had the management and control, and provided that the successful bidder should execute a bond in favor of defendant in the sum of $100,000, with the reservation of the right to reject any and all bids, and that intervener submitted a bid for said deposit and offered to pay interest thereon at the rate of 3Vic per cent, per annum on the daily balances of defendant on deposit with intervener ; that intervener’s bid was accepted by the Orleans levee board, and thereupon intervener arranged with the Fidelity & Deposit Company of Maryland as surety in a. bond for the sum of $100,000 in favor of defendant under the terms of the advertisement heretofore referred to; and that thereafter a contract was entered into between defendant intervener and the said Fidelity & Deposit Company of Maryland, whereby, in consideration of the obligation assumed by intervener to accept the fiscal agency of defendant and to pay to defendant interest on its daily balances at the rate of 3 Vic per cent, per annum and of the agreement on the part of the Fidelity & Deposit Company of Maryland to obligate itself, as above stated, in the sum of $100,000 as surety of intervener, for such deposits as might be made with intervener by the defendant, as well as for the payment of interest thereon, defendant did appoint intervener its fiscal agent for the year succeeding March 1, 1909, and did agree that intervener as such fiscal agent should be entitled to the deposit of all funds belonging to the Orleans levee board during said term. But it denied that any of said acts and doings, whether on the part of defendant or of intervener, or of the Fidelity & Deposit Company of Maryland, were made or done under any authority of law. It especially denied that the same weise had or done in compliance with the provisions of Act No. 23 of the Extra Session of the General Assembly of the State of Louisiana for the year 1907. *461 Eurther answering the petition of intervention, it averred: That defendant, the Orleans levee board, had been authorized by Act No. 25 of the General Assembly of the State of Louisiana for the year 1908 to make and issue, under the terms and conditions of said act provided, bonds in an amount not exceeding $3,000,000; that defendant was, by the terms of said act, also authorized to exchange for the then outstanding bonds of said defendant, on a basis of par and accrued interest, and to use the proceeds of the sale of said bonds for the retirement by payment of certificates issued for property previously appropriated for levee purposes, for the purchase of property necessary for such purpose, and for enlarging and strengthening the levee system in said Orleans levee district; that defendant has sold bonds to the amount of $2,756,000, of which amount $2,000,000 of bonds had already been delivered and the proceeds of the sale thereof received by defendant; and that the proceeds of the sale of the balance of said bonds would be received by defendant on or about the 1st of May, 1909. It admitted that defendant had deposited with intervener the balance of the proceeds of the sale of bonds aforesaid which remained unexpended in defendant’s possession and control, and that, of the deposit so made, there was then on deposit with intervener the sum of $261,023.36.
In view of the premises it prayed that the demand contained in the petition of intervention herein be rejected, and that said petition be dismissed at intervener’s cost.
The defendant answered the petition of intervener. It admitted the allegations and facts therein contained, and reiterated the allegations it had made in its answer to the original petition in the case. It reiterated the prayer in that answer contained.
The district court rendered judgment making peremptory the alternative writ which had issued in the case, and rendered judgment in favor of the state of Louisiana and against the intervener, the Interstate Trust & Banking Company, and the defendant, the Board of Levee Commissioners of the Orleans Levee District, commanding said Board of Levee Commissioners of the Orleans Levee District to immediately transfer and pay into the state treasury the proceeds of the sale of the bonds issued and sold by said board under the terms of Act No. 25 of 1908, as well as all other moneys belonging to said board and for costs.
In the brief filed on behalf of the state, the Attorney Generai says:
“The only question submitted to this court is whether the proceeds arising from the sales of certain bonds issued by the defendant under Act No. 25 of 1908 should be deposited in the state treasury, or whether the same may be deposited with the Interstate Trust & Banking Company, a bank selected by the defendant for the deposit of those funds under the authority which it claims to have by virtue of the provision of Act No. 23 of the Extra Session of the General Assembly of the state approved December 3, 1907.”
The position of the state is that the levee district is a mere agency or instrumentality of the state, the Board of Commissioners thereof mere agents of the state, and all money collected by that board from whatever source under legislative authority is money of the state which should be deposited with the State Treasurer unless otherwise specially provided. Fisher v. Steele, Auditor, & Burke, Treasurer, 39 La. Ann. 447, 1 South. 882.
The defendant board was organized under Act No. 93 of 1890. No revenue was contemplated for said board except the proceeds of a one-mill tax which the law authorized and provided should be collected by the state tax collector and by that officer transmitted to the State Treasurer.. The funds which pass from the state tax collectors into the state treasury are not involved in this litigation. It is conceded that these taxes are properly on deposit with the state fiscal agen *463 cy. The state tax collector was directed to settle with the State Auditor and State Treasurer as a separate fund account to the credit of the Board of Commissioners of the Orleans Levee District.
There was no authority to be found in any act of the Legislature for the issuing of bonds by that district, until, by section 1 of Act No. 116 of 1898, it was authorized to issue bonds to the-amount of $5,000 payable in 15 years from the date of their issuance and bearing interest at a rate not exceeding 5 per cent, per annum from date to be represented by coupons attached to said bonds payable semiannually at the office of the State Treasurer.
The next act of the General Assembly which authorized the issuing of bonds by the board was Act No. 25 of 1908, which authorized the issuance of bonds to the amount of $3,000,000, the interest thereon payable semiannually at the office of the State Treasurer.
The Extra Session of the General Assembly held in the year 1907 enacted Act No. 23, entitled :
“An act providing for the deposit of the public funds the interest to be paid thereon the security to be given therefor the realization upon such security in case of the failure of a depositary and providing penalties for the violation of the act.”
By its first section it was provided in the act:
“That all funds of the state of Louisiana and of all parishes and municipalities thereof and of all public boards, commissions and bodies created by or under the authority of the state or any parish or municipality thereof shall be deposited in the fiscal agency or agencies hereafter mentioned which deposits shall be made in the name of the state or of the parish, municipality, board, commissioners or body having-by law the custody of the same.”
By the second section it was provided that the fiscal agency or agencies with whom such funds shall be deposited shall be a bank or banks chartered under the laws of the state of Louisiana, or of the United States, and domiciled in the state offering the highest rate of interest consistent with the safety of such funds upon the daily balances of the deposits so to be made, and giving satisfactory security hereinafter mentioned. Such fiscal agency or agencies shall be selected as follows:
(1) As to funds belonging to or received on behalf of the state, whether by the State Treasurer or any sheriff or tax collector, the board of liquidation of the state debt shall biennially for 30 days, beginning on the first Monday of March, 1908, advertise in the official journal published in the cities of New Orleans, Baton Rouge, Shreveport, Alexandria, Monroe, Lake Charles, and New Iberia as to funds received by and in the hands of sheriffs and tax collectors. Said board shall advertise for a like period in the same manner in one newspaper published in the parish where such collective officer exercises his office, giving notice of the time and place of the letting out of the- state’s deposits, the amount of security required, and inviting banks to bid for the custody thereof; provided that as to the funds in the hands of the State Treasurer said advertisements shall be first made 30 days prior to the expiration of the present contract with the fiscal agencies of the state, and the first letting shall be for a period expiring April, 1910.
Should there be but one bank in any parish authorized hereunder to bid for the funds received or in the hands of any sheriff or tax collector, said board is authorized to invite bids also from banks in contiguous parishes when in their judgment deemed proper; otherwise bidders shall be limited to banks domiciled in said parish. As soon as possible after the expiration of the terms of advertisement herein fixed shall have expired, said board shall meet at the capítol and publicly open bids and make awards of said deposits as herein required.'
(2) As to funds belonging to or received in behalf of any parish or municipality of this *465 state, the police jury or the municipal council shall at the same time, in the same manner, and under the same regulations and penalties as are provided for the control of the board of liquidation of the state debt in reference to funds received by and in the hands of sheriffs or tax collectors, advertise and let such funds; provided that said advertisement shall be for a period of 15 days.
(3) As to funds belonging to or received by any public board, commission, or body created by any special or general act of the General Assembly of the state, not held in the custody or possession of the State Treasurer, such board, commission, or body shall advertise and let the deposit to the bank' or banks domiciled within the territorial jurisdiction of such board, commission, or body, or, in case such jurisdiction does not extend over an even parish, then to any bank in the parish in the same manner, at the same time, and under the same regulations and penalties as are prescribed herein for funds of parishes and municipalities.
By section 8 it is provided that in case it should become necessary for the state to obtain advantages of money, or for any of the other authorities to borrow money in eases permitted by law, the bank or banks awarded the contract as fiscal agent or agents shall advance the same at a rate of interest no greater than that allowed on the said deposit ; provided the amount so advanced shall not exceed the amount on deposit to the credit of the state or such authority.
Section 9: Wherever by any existing law or laws the deposit of the funds of any municipality, board, commission, or body, with any bank or banks paying the highest rate of interest consistent with the safety of such funds, and giving security therefor, is provided for, such law or laws shall remain in full force and effect, and not be repealed or impaired thereby. Nor shall any existing contracts made in pursuance of any such law or laws be affected or impaired, hereby. ' Except as in this section provided all laws or parts of laws in conflict .herewith, are hereby repealed. Section 10: This act shall take effect on and after the 1st day of' March, 1908.
By Act No. 282, p. 414, of 1908, the first section of Act No. 23 of the Extra Session of 1907 was amended and re-enacted so as to-read that:
“All funds of the state of Louisiana and of' all parishes, municipalities thereof and all public boards, commissions and bodies created by or under the authority of the state or any municipality thereof shall be deposited weekly in the fiscal agency or agencies hereinafter mentioned. Such deposit shall be made in file-name of the state or of the parish, municipality, board, commissions or body having by law the custody of the same.”
On the trial of the case it was admitted by all parties that all of the allegations of fact made in the petition of the relator in the case, in the petition of intervention of the Interstate Trust & Banking Company, and in the answer filed by the Board of Commissioners of the Orleans Levee District, and the-answers to the intervention, are true. It is urged on behalf of the state: That by section 2769 of the Revised Statutes all moneys of the state should be deposited with the State Treasurer, who is bound to receive and safely keep all the moneys of the state not expressly required by law to be received by some other person.
That levee boards have no other treasurer than the State Treasurer, and all of their obligations are paid directly by the state treasury, through the State Treasurer, through the State Auditor, whose duty it is by section 176 of the Revised Statutes to audit, adjust, and settle all claims against the state payable out of the treasury. That the State Auditor by Act No. 117, p. 180, of 1838, was given additional compensation of $2,400 for auditing and keeping the accounts of the various levee boards of the state through *467 warrants drawn by him on the State Treasurer.
That the Orleans levee board is not entitled to select a fiscal agent under the provisions of Act No. 23 of the Extra Session of 1907:
(1) Because it has not the custody of their funds.
(2) Because such funds are received on behalf of the state by the State Treasurer.
(3) Because the public boards of the state are only entitled to make deposits with the fiscal agents of their own selection where the funds to be deposited are not held in the custody or possession of the State Treasurer.
The relator relies very much upon the fact that all the levee boards (about 15 in number) have issued bonds, and, with the exception of the Orleans levee hoard, the proceeds of the same have been paid over to the State Treasurer. The Attorney General says that about one-half of these 15 boards were in the act creating them directed to deposit all of their funds with the State Treasurer, and have done so, while the others, though not directed to deposit their funds with the treasurer, have none the less done so.
lie admits that the act does not specially declare that the proceeds arising from the sales of the bonds authorized by the act shall be deposited with the State' Treasurer, but contends that when it is thoroughly analyzed, and the duties therein imposed upon the State Treasurer are considered, and due weight given to the fact that by Act No. 93 of 1890 the State Treasurer is made the treasurer of the Orleans levee district for the purposes therein named, no other reasonable conclusion can be reached but that he is by virtue of his office as State Treasurer the treasurer and custodian of all the funds arising from whatever source belonging to the levee district.
The defendant, on the other hand, contends: That the Orleans levee district board has only been authorized by the Legislature twice to issue, first by Act No. 116 of 1893, when a $500,000 issue was provided for, and, secondly, Act No. 25 of 1908. That so far as the proceeds of the first bond issue were concerned same were collected by the bo'ard, used and paid out by it, and no requisition for their custody was ever made by the State Treasurer or other executive officer during the 11 years that the Orleans levee bonds were outstanding.
That the difference in the character of the two funds, the proceeds of the taxes, on the one hand, and the proceeds derived from the' sale of bonds, on the other, is marked and was clearly recognized by the Legislature itself under the very terms of Act No. 23 of 1907. In the former case, a certain fund is derived from taxation, and the proceeds are collected by an independent state official, the state tax collector, who without the intervention of the board transmits the same to the state treasury. In no sense are those funds “belonging to” or “received by” the defendant board within the phraseology of Act No. 23 of 1907, while in the latter case the amount of funds are collected physically by and actually belong to “and are received by” the defendant board within the phraseology of Act No. 23 of 1907.
Nowhere in Act No. 116 of 1898 is any provision found directing either the deposit of the funds derived from the bonds with the State Treasurer, nor any method of withdrawal of the deposit that could be inferred from any other law. The same is also true of the terms of Act No. 25 of 1908, authorizing the recent issue. Act No. 23 of the Extra Session of 1907 was passed in pursuance of one of the special calls for the said Extra Session of 1907. Its purpose, broadly stated, was to provide additional revenue in the shape of interest on public funds appertaining to public agencies having the custody and control of such funds and for the benefit of the people within the territorial jurisdiction of *469 such board and in aid of the objects and purposes with which such board was intrusted. The act was the indirect result of the cases of Board of Liquidation of the City Debt v. Briede, 117 La. 183, 41 South. 487, and its sequel City of New Orleans v. Board of Liquidation 118 La. 543, 43 South. 157, to which further reference is made below. It is conceded that all public funds that go into the state treasury are let out at interest by the state board of liquidation, but the interest so derived goes to the general credit of the state, and is lost to the public agency transmitting the funds. In the present ease the difference in interest lost to the people of the city would be in excess of $1,100 per month.
We do not attach any particular weight to the fact that prior to the act of 1907 the levee boards made use of the State Auditor and State Treasurer for the purpose of auditing, adjusting, and settling their affairs through those officers, nor to the fact that the funds under the control of the different boards for the purpose of carrying out the objects for which they were created should have been deposited by them in the state treasury.
There was no reason or motive for their acting otherwise. They were relieved of considerable trouble and labor by so doing, and there was nothing to influence them in following a different course. At the time this Act No. 23 of 1907 was enacted, a great change for the better had taken place in business and financial conditions in Louisiana. The position of the banks with reference to the deposit therein made of public funds had completely changed.
The banks were no longer merely willing to accept the position of fiscal agencies. They sought to obtain the privilege of becoming such, and to the end of doing so offered to pay the depositors interest on the funds to be received. The interest to be received became an asset of no inconsiderable business importance to the depositing bodies in aid and for the advancement of the objects and purposes for which they were respectively created. That this last consideration was in the minds of the lawmakers and was the motive to a great degree for the enactment of the statute of 1907 is manifest from the direct reference to the matter of interest in the fourth and fifth sections of the act and the designation of the parties to whom should inure the benefit of that interest. The act evidences a general line of policy forward, touching the deposit of the funds of the state and the different political corporations thereof. The General Assembly evidently intended that full scope should be given to its provisions, and that it should be the controlling statute on the subject for the future. We find no good ground for supposing that the General Assembly intended that the interest to be paid on the deposit of funds raised for and to be applied for the prosecution of public works in particular districts should be made to inure, not to the benefit, and in aid of, those works, but to the benefit of the state at large through its general fund.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and it is now adjudged and decreed that there be judgment in favor of the defendant, the Board of Levee Commissioners of the Orleans Levee District, and of the intervener, the Interstate Trust & Banking Company, and against the plaintiff and relator, the state of Louisiana, rejecting its demand herein, and dismissing its suit.