O’NIELL, C. J.
 

 The purpose of this suit is to determine the status and security of a bond issue of $2,-200,000, of the board of levee commissioners of the Orleans levee district. The bonds were authorized by an ordinance of the hoard, adopted on the 7th of April, 1030, under the authority to issue bonds to the amount of .$15,000,000, conferred by subsection (i) of section 7 of article 16 of the Constitution, as this section was amended in November, 1928, according to Act No. 292 of 1928.
 

 The defendant Whitney Trust & Savings Bank accepted an offer of the levee board
 
 to
 
 sell the bank five of the bonds, on the following conditions and representations, viz:
 

 “We hereby offer to sell to you for par and accrued interest five (5) bonds, each for the principal sum of $1,000, being a portion of an issue of bonds authorized under the constitutional amendment embodied in Louisiana Act No. 292 of 1928 and under the ordinance of this board adopted at its meeting held on the seventh day of April 1930, a copy of which is attached, and under the resolution of the Board of Liquidation of the State Debt, adopted at its meeting held on the twenty-eighth day of March, 1930, a copy of which is attached.
 

 “In making this offer we expressly represent to you:
 

 “1. That said bonds are valid obligations of the Board of Commissioners of the Orleans Levee District, enforceable as general obligations of that body in the courts of Louisiana and in the Federal Courts having jurisdiction in Orleans Parish, Louisiana.
 

 “2. That the issue of bonds, of which said bonds are a part are validly secured, not only by the lands, cash, leases, rights, etc., enumerated in paragraph 1 of the amendment embodied in Act 292 of the Louisiana Legislature of 1928, but by the pledge of the taxing power conferred by law upon the Board of Levee Commissioners of the Orleans Levee District, and'that you, as purchaser of said bonds, may, in ease of default of said bonds in principal, interest or charges, compel the exercise of that power by this board through proper judicial proceedings, for the purpose of paying either the interest, the principal or the charges upon same or any of the same as they respectively mature.
 

 . “3. That there is specially pledged and mortgaged to secure these bonds the land to be reclaimed, the cash, notes and other evidences of indebtedness, and the rents, incomes and other advantages accruing from said lands, and generally any and all rights of this board in and to any ‘Land, property, income, revenues, claims, and other choses in action, forming part of and/or arising out of said development,’ and, should this not be adequate to pay these bonds in principal and in interest as it respectively matures, that there is now available and undedieated to
 
 *33
 
 other purpose sufficient taxing power, authorized hy the Louisiana Constitution of 1921, particularly Article 16, section 2, remaining in this hoard, to care for the requirements of the issue of bonds of which t'hese bonds are a part; and the sale of this issue of bonds, under the ordinance above referred to, after the proper credits on same derived from the mortgaged or pledged property securing same have been made, dedicates
 
 from the aforesaid taxes a sufficient amount to the repayment
 
 in full of any amount due as a balance on the interest and principal of aforesaid bonds to the exclusion of other uses of the taxing power, to that extent, of this board.
 

 “4. That the purposes for which said bonds are beirlg sold are purposes for which this board may validly expend its funds, derived from taxation.
 

 “In case you purchase the bonds, your purchase will be upon the express conditions above set forth.”
 

 In pursuance of this offer of sale, signed by the president and by the secretary of the board of levee commissioners, and accepted by the bank, the board tendered to the bank the five bonds, which the band declined to accept, on the ground that the bonds tendered did not conform with the requirements of the contract. The levee board thereupon brought this suit to compel the bank to accept the bonds and pay the price. The case was submitted on a statement of facts, mutually admitted. The civil district court decided in favor of the levee board. The bank has appealed from the decision.
 

 It is not disputed that the payment of the bonds is secured by a mortgage on the lands and the improvements to be made thereon, and by a pledge of the property, leases, incomes, and revenues, arising out of the so-called “Lakefront Improvement Project,” for which these bonds are being issued, under the provisions of the constitutional Amendment of 1928, pursuant to Act No. 292 of 1928. The bank contends that the bonds are not payable out of any other revenues, or collectible from any other source than from the property, leases, incomes and revenues that may result from the reclamation project, called “Lakefront Improvement Project.”
 

 The argument, on behalf of the bank, that these bonds are not the general obligations of the board of levee commissioners of the Orleans levee district, enforceable as such in the courts having jurisdiction in the parish of Orleans, is based upon the idea, expressed in some of the decisions of this court, that levee boards are mere agencies < or functionaries of the state, exercising certain delegated powers belonging to the state government. The cases in which such expressions were used were Fisher v. Steele, Auditor, 39 La. Levee Board, 51 La. Ann. 523, 25 So. 415; State ex rel. Guion, Attorney General v. Board of Levee Commissioners, 124 La. 446, 50 So. 458; Board of Commissioners v. Howard Land & Timber Co., 132 La. 911, 61 So. 868; and State ex rel. Board of Commissioners v. Grace, Register of State Land Office, 161 La. 1039, 109 So. 830. It was not denied, but was in fact acknowledged, in the eases cited, that the levee boards were political corporations, independent of the state, except to the extent that their autonomy, like that of other public corporations, was subject to the will of the Legislature, within its constitutional limitations. And, in’a later’ case, State v. Standard Oil Co., on rehearing, 164 La. 357, 113 So. 867, 875, the expression used in State ex rel. Board of Commissioners v. Grace, Register of State Land Office, was explained thus: “The board is a state agency, of course, just as any other subdivi
 
 *35
 
 sion incorporated by an act of tbe Legislature is a state agency; but the board has the right to sue and be sued, and it alone must assert its rights of action. The Attorney General has no right to sue for and in the name of the state on a cause or right of action possessed only by the levee board.” See, also, Board of Commissioners v. Hardtner, 164 La. 632, 114 So. 494. In Board of Commissioners of Caddo Levee District v. Pure Oil Co., 167 La. 801, 120 So. 373, it was held that the levee board was a corporation so distinct and independent that the prescription of three years, under article 3538 of the Civil Code, ran against the levee board, notwithstanding the prescription could not have run against the state.
 

 In the third section of the statute creating this levee board Act No. 93 of 1890, p. 95, the corporation is described thus:
 

 “That said commissioners shall constitute and be styled ‘The Board of Levee Commissioners of the Orleans Levee District,’ and as such are hereby constituted and created a body politic, with needful succession and corporate powers; shall have power to sue and be sued in their corporate name; shall have a common seal, and shall have the franchise and power to do and perform all the purposes of this act; and to acquire, hold, own and convey all the property, real and personal, needful in the premises, and to alienate, mortgage and pledge the same for said purposes. The domicile of this Board shall be in the city of New Orleans, where it shall be suable; and service of citation shall in all eases be made upon its President.”
 

 • The argument that the levee board is merely a state agency, without the autonomy ordinarily possessed by political corporations, is followed up with the argument that, inasmuch as it is provided in paragraph (4) of subsection (i) of section 7 or article 16 of the Constitution, as amended, that the bonds therein authorized to be issued shall not be construed as obligations of the state, and that nothing in the act shall be construed as pledging the credit of the state for the payment of the bonds, therefore the bonds cannot be construed
 
 las
 
 obligations of the levee board, for the payment whereof its credit may be deemed pledged. Our opinion, on the contrary, is that the proviso in the constitutional amendment that the bonds shall not be construed as obligations of the state, and that nothing in the amendment shall be construed as pledging the credit of the state for the payment of the bonds, conveys a strong inference, and is in fact a recognition that the bonds are the obligations of the levee board, for the payment of which its credit is pledged. There is no reason to doubt that, if the Legislature had intended, in proposing the constitutional amendment, that the credit of the levee board should not be pledged for the payment of the bonds, the Act 292 of 1928, proposing the amendment, would have contained that proviso, as well as — or instead of — the proviso that the credit of the state should not be deemed pledged for the payment of the bonds.
 

 Our conclusion, therefore, is that these bonds are valid obligations of the board of levee commissioners of the Orleans levee district, enforcible as such in the courts having jurisdiction in the parish of Orleans.
 

 We shall consider next the question whether the purposes for which the bonds are being sold are purposes for which the levee board may expend lawfully the funds which it may derive from taxation. It is admitted by counsel for the bank that one of the purposes of the work for which these' bonds are issued is to protect the rear .of the city of New Orleans from inundation by flood waters coming through the Bonnet Carre spillway;
 
 *37
 
 but it is contended that that is only one of the purposes of the great work, and that its principal purpose is to reclaim the vast area of land, which is now lake bottom, within the area of the project, and to transform it into a residence district, with boulevards, recreation parks, playgrounds, and other places of amusement. The fact that the Legislature, in proposing this constitutional amendment, and the electors in adopting it, entrusted the work to the levee board, is conclusive proof that the purpose, or main purpose, to be accomplished was one for which the levee board was created, and for which the board is authorized to levy taxes; that is to say, the protection of the city of New Orleans against flood from Lake Pontchartrain. Under the seventh section of article 16 of the Constitution, before it was amended, the board of levee commissioners of the Orleans levee district was expressly empowered to construct and maintain levees and embankments along, over and in the bed of Lake Pontchartrain, at such distance from the present shore line as the board might deem best, not to exceed 2,-500 feet from the present shore line, and along and on the shores adjacent thereto, and along the canals connecting therewith, and in such other places in the parish of Orleans and adjacent parishes as the board might determine, the levees and embankments to be of such height, width, slope, design and character of material as the board might determine, and to protect said levees and embankments with such piling, revetments, or walls, as the board might deem proper. Por that purpose the levee board was given the use of all public lands, including such portions of the lake bottom as the board might deem necessary. The constitutional amendment, adopted in 1928, pursuant to Act No. 292 of that year, merely amplifies the authority of the levee board so as to permit it to locate the concrete sea wall or revetment three miles from the present shore line, if necessary to obtain a solid foundation, and to fill in and reclaim the area, which is now the lake bottom, between the present shore line and the sea wail or revetment. It appears that the filling of the space between the present shore line and the protecting wall or revetment is necessary to protect the wall itself; and the improving and making valuable the reclaimed area, so as to diminish the cost of the project, will be a mere incident of the work of protecting the city against floods. Our conclusion, therefore, is that the purpose of this bond issue is one for which the levee board may legally expend its funds to be derived from taxation.
 

 The next question is whether the bond issue, besides being secured by a mortgage on the lands and a pledge of the leases, rents and revenues enumerated in paragraphs (1), (2), (3), and (4) of subsection (i) of section 7 of article 16 of the Constitution, as amended pursuant to Act No. 292 of 1928, is additionally secured by the pledge of the taxing power of the levee board, so that a purchaser of the bonds may, in case of default in the payment of the interest, principal, or charges, compel the levee board, by judicial proceedings, to exercise its taxing power for the purpose of paying the interest, the principal, and the charges on the bonds, or any of them, as they, respectively, mature. The ordinance adopted by the levee board on the 7th of April, 1930, providing for this bond issue, declares that, in the event the revenues derived from the sale or leasing of the lands, or arising out of the lands in any manner whatsoever, shall be insufficient to provide for the payment of the principal and interest of the bonds at maturity, the board of levee, commissioners shall levy a tax upon all taxable property in the district to the full ex
 
 *39
 
 tent to which the hoard may now or hereafter he authorized by the Constitution or statutes to levy taxes to meet such deficiency and to insure the prompt payment in full of the principal and interest, of the bonds as they become due and payable. There is no doubt, therefore, that the levee board has pledged its taxing power, if its taxing power can he lawfully pledged, to the payment of these bonds; and the taxing power of the board is lawfully committed to the payment of the bonds. By the provisions of the fifth section of the statute creating this levee district, Act No. 93 of 1890, the board of levee commissioners was required to levy annually a tax not exceeding one mill on the dollar of the assessed valuation on all taxable property in the district; and in the seventh section of the statute it is declared that the duty of the board,and its officers toilevy and collect the taxes shall continue, and that the provisions of the law in that respect shall remain irrepealable, as long as any obligation of the board remains unpaid, and that these provisions of the law shall be always enforceable by mandamus or injunction or other remedy in the courts. The limit of taxes which the levee board may levy annually is now, according to the second section of article 16 of the Constitution of 1921, as it was under article 214 of the Constitution of 1879, in force when this levee board was created, five mills on the dollar, “for the purpose of constructing and maintaining levees, levee drainage, and for all other purposes incidental thereto.” The purposes of this bond issue are, as we have already said, the constructing of a levee, and purposes incidental thereto. It was, therefore, not at all necessary that the constitutional amendment of 192S, according to the provisions of Act No. 292 of that year, should contain a repetition that the levee board had the authority to levy annually a tax not exceeding five mills on the dollar, to.provide for the payment of the bonds which the board was authorized to issue, to pay for this Lakefront improvement project. Nor was it necessary to provide again for compulsory process, by mandamus or otherwise, to compel the levy and collection of the tax; for the provisions of the seventh section of Act No. 93 of 1890, if in fact they were ever necessary, are as applicable now to the tax lhpitation of five mills as they originally were to the limitation of one mill on the dollar.
 

 It is not disputed, and seems to be conceded, that the levee board has now, available and undedicated to any other purpose, sufficient of the taxing power of five mills, authorized by the second section of article 16 of the Constitution, to take care of the bond issue of which these bonds are a part; but we find it impossible,to maintain the repre-' sentation of the levee board that “the sale of this issue of bonds, under the ordinance above referred to, * * * dedicates
 
 from the aforesaid taxes
 
 a sufficient amount to’the repayment in full of any amount due as a balance on the interest and principal of aforesaid bonds to the exclusion of other uses of the taxing power, to that extent, of this board,” after the proper credits derived from the mortgaged and pledged property securing the payment of the bonds have been made thereon. It is not stipulated in the ordinance of April 7, 1930, providing for this bond issue, that a sale of the bonds shall operate as a dedication of a sufficient amount of taxes to pay the bonds, to the exclusion of other uses of the taxing power, to that extent,, of the levee board. The only stipulation in that respect, in the ordinance of April 7th, is that the board is pledged in the sense that its obligation may be enforced, by mandamus or other judicial proceedings, to levy and collect and apply to the payment of this bond is
 
 *41
 
 sue a tax sufficient to pay the interest on the bonds promptly and to pay the principal promptly at maturity — if such a tax levy be then within the constitutional limitation. The board cannot now, and does not pretend to, levy a tax for the payment of these bonds, because it is not possible to calculate now, or even to estimate, the rate of taxes necessary for the purpose; hence it is not possible for the board to dedicate to that purpose any specified portion of the five mills of taxes authorized by the second section of article IS of the Constitution, “to the exclusion of other uses of the taxing power” of the board. Because of that condition or representation in the offer of sale of the five bonds to the bank, we are constrained to reverse the judgment appealed from, and dismiss this suit, notwithstanding the board has done all that could be done in the way of pledging its taxing power to the payment of these bonds. Nothing but the conscience of the members of the board and such process as the courts may afford could prevent the board from exhausting its taxing power before these bonds mature. ,
 

 On the day on which this case was submitted for decision in the civil district court, several persons claiming to be the heirs and legal representatives of Jean Lavergne, Sr., deceased, filed a- petition of intervention, in which they alleged that they owned a tract of land containing about 37 arpents within the area of land which the levee board intends to mortgage to secure the payment of this bond issue; and in which petition of intervention the interveners prayed that the proposed sale of bonds should be decreed null, and that the levee board should be forbidden to appropriate the land claimed by the interveners. On motion of the levee board, the petition of intervention was dismissed as in case of nonsuit. The interveners appealed from the judgment dismissing their petition of intervention, and presented their appeal along with that of the plaintiff in this suit. The judgment dismissing the petition of intervention is correct, not only because the intervention came too late and was calculated merely to retard the trial of the original suit, but also because the petition of intervention presented an issue which was entirely foreign to the issues between the plaintiff and defendant in the original suit, and which was already pending in another suit in the civil district court, in which the present interveners are the plaintiffs and the levee board is the defendant. We affirm the judgment of dismissal of the intervention in the present suit; which is perhaps unnecessary, because the dismissal of this suit will have the effect of dismissing also the petition of intervention.
 

 The judgment appealed from is annulled, and this suit is dismissed. The plaintiff is to pay the costs of the original suit and the interveners the costs of their intervention.