HAWTHORNE, Justice.
 

 Plaintiff in these proceedings seeks to enjoin the Board of Liquidation of the State Debt and. the individual members thereof (Earl K. Long, Governor; George M. Wallace, Executive Counsel to the Governor; William J. Dodd, Lieutenant Governor; Morris A. Lottinger, Speaker of the .House of Representatives; John J. McKeithen, Chairman of the House Appropriations Committee; Ludlow B. Baynard, Auditor, and Andrew P. Tugwell, Treasurer) from issuing $60,000,000 in bonds and from selling $50,000,000 of said bonds, which bonds were to be issued and sold pursuant to the authority and under the provisions of Section 10 of Article 18 of the Constitution of this state.
 

 From a judgment in favor of the defendants setting aside and recalling a rule nisi theretofore issued and denying a preliminary injunction and dismissing plaintiff’s suit, plaintiff has appealed to this court.
 

 In Act No. 530 of 1948, the Legislature of this state submitted to the electors' a proposal to amend Article 18 of the Constitution by adding thereto Section 10 relative
 
 *893
 
 to bonuses for Louisiana servicemen and servicewomen and ex-servicemen and ex-servicewomen and certain of their relatives. This amendment was adopted and approved by the majority of the voters of this state.
 

 It was provided in this constitutional amendment that the bonuses were to be paid out of the tax levied on beer, Act No. 8 of 1948, and, further, that, in order to realize sufficient funds out of which to pay the bonuses and the necessary costs of distribution and administration, the Board of Liquidation of the State Debt was authorized to anticipate the collection of the tax and to incur debt to an amount not exceeding $60,000,000, and as evidence thereof to issue certificates of indebtedness, bonds, notes, or other evidences of debt in such amounts and denominations and at such maturities and at such rate of interest as in the judgment and wisdom of the board would be deemed advisable, and in order to secure the payment of such notes, bonds, certificates of indebtedness, or other evidences of debt and the interest thereon the Board of Liquidation was authorized to pledge and dedicate the avails and proceeds of the beer tax.
 

 The Board of Liquidation of the State Debt, pursuant to the authority of the constitutional amendment, adopted resolutions providing for the issuance of $60,000,000 of bonds and for the sale of the principal amount of $50,000,000 of the bonds so issued. The resolution authorizing the issuance of the bonds and the bonds themselves provided that there were irrevocably and irrepealably pledged and dedicated to the payment of principal and interest of the bonds, as the principal and interest should respectively become due and payable, the avails and proceeds of the tax levied on beer authorized by Act No. 8 of the Regular Session of 1948 of the Legislature of this state, and, further, that for the payment of principal and interest of these bonds the full faith, credit, and resources of the State of Louisiana were unconditionally and irrevocably pledged, and that the bonds should be general obligations of the State of Louisiana.
 

 Plaintiff-appellant contends that the Board of Liquidation of the State Debt did not have the authority to provide that these bonds should be secured by the full faith and credit of the State of Louisiana and should be general obligations of the state, for the reason that Section 10 of Article 18 of the Constitution contained no provision expressly conferring upon the board the power so to provide; that under the constitutional amendment the board is authorized only to issue bonds payable out of the proceeds of the tax levied on beer under the provisions of Act No. 8 of 1948; that such provision is unauthorized, illegal, contrary to the provisions of the cited article of the Constitution, null, void, and ultra vires.
 

 The sole question for our determination is whether these bonds are general obligations of the State of Louisiana, for the
 
 *895
 
 payment of which the full faith and credit of the State of Louisiana are pledged.
 

 The Board of Liquidation of the State Debt was created and exjsts pursuant to the authority of Article 4, Section 1(a), of the Constitution of 1921, and is a department of the state government and not an entity distinct from the state, and the bonds which it is authorized to issue under the provisions of Section 10, Article 18, of the Constitution, are bonds of the State of Louisiana. The acts of the board being acts of the state, any indebtedness which the board lawfully incurs is therefore the indebtedness of the state and not the obligation of the board itself.
 

 Counsel for defendants-appellees in brief filed in this court state that the answer to the question is t'o be determined by the principles of statutory construction which have been adopted by the courts of this state, and that, insofar as the question at issue here is concerned, the principles of statutory construction prevailing in this state are identical with those adopted by the courts, state and Federal, throughout the country. The rule of statutory construction applicable to the instant case is then stated in brief -thus:
 

 “It is well established that a statute, authorizing the contracting of debt on behalf of a public agency, which provides a special fund for the payment of the debt, contemplates the issuance of a general obligation to represent the debt so incurred unless it provides, expressly or by necessary implication, that payment of the debt shall be limited to the special fund.”
 

 In support of this rule of statutory construction counsel for appellees cite and rely on the following cases: United States v. County of Clark, 96 U.S. 211, 24 L.Ed. 628; Vickrey v. City of Sioux City et al., CC., 115 F. 437; Bush v. Martineau, Governor, et al., 174 Ark. 214, 295 S.W. 9; Board of Com’rs of Orleans Levee Dist. v. Whitney Trust & Savings Bank, 171 La. 28, 129 So. 658.
 

 We have carefully studied and analyzed these cases, and in our opinion they are full authority for counsel’s position.
 

 In United States v. County of Clark, supra, which appears to be a leading case on this question, one Johnston had obtained a judgment against the county for unpaid interest instalments of certain bonds, and by mandamus proceedings was seeking to compel the county authorities to draw a warrant on the county treasurer for the amount of the judgment. The statute authorizing the issuance of the bonds provided also for the levy of a tax to pay for them. The question, therefore, was whether the judgment creditor could look to the general treasury of the county for payment when a special tax had been authorized for the payment of the bonds. The Supreme Court of the United States answered the question in the affirmative, observing in the course of the opinion:
 

 “ * * * There is no provision in the act that the proceeds of the special tax
 
 *897
 
 alone shall be applied to the payment of the bonds. None is expressed, and none, we think, can fairly be implied. It is no uncommon thing in legislation to provide a particular fund as additional security for the payment of a debt. It has often been done by the States, and more than once by the Federal government. * * * These bonds are a debt of the county as fully as is any other liability.”
 

 The case of Vickrey v. City of Sioux City et al., supra, involved two classes of bonds issued by the City of Sioux City. Each class was issued under separate authority of the Legislature and a separate ordinance of the city. The legislative act authorizing one class declared that the city council should have power to issue bonds payable only out of special assessments which had been levied to pay the cost of street improvements, and it further provided that the bonds should express on their face that they were issued under the provisions of that act, and that they were payable only out of the special assessments levied for the purpose of paying for street improvements. The court held as to this class [115 F. 438]:
 

 “ * * * Under these circumstances' * * * bonds of this class did not constitute obligations binding the city for the payment of the bonds as original obligations issued by the city, but * * * the liability of the city was limited to the proper collection and disposition of .the special assessments pledged for the payment of the indebtedness represented by the several bonds.”
 

 The legislative act authorizing the issuance of the other class of bonds also provided -for the levying of special taxes and further provided that those taxes would constitute a sinking fund for the payment of the costs of the improvement and of any bonds issued to pay the cost thereof. The' court said:
 

 “There is not to be found in the act any express declaration that the bonds issued are payable only out of the funds realized from the special assessments provided for in the act, nor is such declaration to be found in the language of the bond itself. * * *
 

 “There is not to be found * * * in the act * * *, or in the ordinance of the city based thereon, or in the terms of the bonds themselves, any declaration to the effect that the holders of the bonds can look only to the funds realized from the special assessments for the payment of the bonds, and the express promise to pay on the part of the city which is set forth in the bonds cannot be limited by the inferences sought to be drawn from the fact that the act of the legislature provides for the creation of a-sinking fund, consisting of the funds derived from the special assessments, to be used only for the payment of the costs of the improvements, including the bonds issued to meet the cost.”
 

 The court accordingly held that the bonds of this class were general obliga-,
 
 *899
 
 tions of the city, for the payment of which the city was unconditionally liable.
 

 Bush v. Martineau, Governor, et al., supra, was a case in which the constitutionality of what were commonly called the state highway acts was challenged, and in which it was contended that the form of notes sought to be issued by the state was without authority in one of the acts, Act No. 11 of 1927, in that the notes were made direct obligations of the state, for which the full faith and credit of the state were pledged. The Arkansas Supreme Court denied the contention that the payment of certain notes could be made only out of the security provided for their payment. The pertinent part of Act No. 11 of 1927 read:
 

 “To provide the funds to meet this requirement, the State shall borrow each year whatever amount may be necessary, * * * and to issue State Highway notes for the amount borrowed, to be secured by. a pledge of the revenues derived from gasoline, motor oil and automobile taxes, and to pledge said revenues, or so much thereof as may be necessary, for the payment of said notes * *
 

 The notes themselves pledged the full •faith and credit of the State of Arkansas in addition to the gasoline taxes, etc., for the payment of the notes. To the contention- that this was erroneous the court said [174 Ark. 214, 295 S.W. 12]:
 

 “It is difficult to perceive why the state’s full faith and credit' should not be pledged, if it is to borrow any money. The fact that it pledges the funds arising from the tax on gas, oil, and motor vehicles does not relieve the state otherwise. The state is not, and should not be, in any different or more favorable situation in this regard than an individual. A farmer who borrows money from his bank and mortgages his crop to secure the payment of his note is not relieved of payment in the event of crop failure. All the faith and credit he has, in addition to the crop, are pledged to the payment of his debt. Necessarily it must be so with the state. Even if the notes were made payable only out of this particular fund, yet if the fund failed or was insufficient, there would be a moral, if not a legal, obligation on the state to pay. The only difference between the obligations of an individual and the state is that the individual may be compelled to pay in a civil action, ’ whereas the state can never be sued in any of her courts, even though morally and legally obligated to pay. There can be no just reason in law why the notes should not contain this clause, and we therefore hold that these notes, when issued, will be the direct obligations of the state, for the payment of which the full faith and credit of the state are pledged.”
 

 In the case of Board of Levee Com’rs of Orleans Levee Dist. v. Whitney Trust & Savings Bank, supra, the levee board, a political corporation independent of the state, issued bonds, the payment of which was secured by a mortgage on certain land and the improvements to be made thereon-
 
 *901
 
 and by a pledge of the property, leases, income, and revenues arising out of the so called “Lakefront Improvement Project,” for which the bonds were being issued pursuant to the provisions of a constitutional amendment. The constitutional amendment authorizing the issuance of the bonds provided that they should not be construed as obligations of the state, and that nothing in the amendment should be construed as pledging the credit of the state for the payment of the bonds. The defendant bank contended that these bonds were not the general obligations of the Board of Commissioners of the Orleans i Levee District, enforceable as such in the courts having jurisdiction in the Parish of Orleans. In' deciding this case adversely to the bank’s contention, this court said [171 La. 28, 129 So. 660]:
 

 “ * * * Our opinion, on the Contrary, is that the proviso in the constitutional amendment that the bonds shall not be construed as obligations of the state, and that nothing in the amendment shall be construed as pledging the credit of the state for the payment of the bonds, conveys a strong inference, and is in fact a recognition that the bonds are the obligations of the levee board, for the payment of which its credit is pledged. There is no reason to doubt that, if the Legislature had intended, in proposing the constitutional amendment, that the credit of the levee board should not be pledged for the payment of the bonds, the Act 292 of 1928, proposing the amendment, would have contained that proviso, as well as — or instead of — the proviso that the credit of the state should not be deemed pledged for the payment of the bonds.
 

 “Our conclusion, therefore, is that these bonds are valid obligations of the board of levee -commissioners of the Orleans levee district, enforcible as such in the courts having jurisdiction in the parish of Orleans.”
 

 Abbott,-in A Treatise on the Law of Public Securities (1913), after discussing a case of the Supreme Court of the United States, stated -that, in some cases where the grant of authority for the issue of securities contains provisions for the levy of a specific tax with which to meet thé accruing interest and ultimately pay the principal of the bonds, “The claim has been made that the holder of the security is limited in his right to recovery to the proceeds of the tax thus levied and that if this proves insufficient for the purposes contemplated -that he is without a remedy. The authorities generally hold on this proposition that although a special tax may be levied at the time the securities are issued either under special statutory provisions or otherwise that the bonds thus issued are not -to be regarded as payable only from this special tax from the special fund thus derived but are general charges upon the revenues . * * Sec. 366, p. 761.
 

 This author points out, however, that, if the indebtedness of the public authority in its terms clearly and unquestionably provides that the debt shall be paid only from
 
 *903
 
 a fund specially provided, the holder is limited in his recovery to such revenues or funds. See sec. 368, p. 764.
 

 The legislature of this state in Act No. 530 of 1948 provided that the payment of the bonds authorized to be issued by the Board of Liquidation of the State Debt was to be secured by a pledge and dedication of the avails and proceeds of the beer tax, authorized by Act No. 8 of 1948, and that the surplus or residue of the tax in each year, after paying the bonuses, notes, bonds, certificates of indebtedness, or other evidence of debt therein authorized and all interest due thereon, should be passed to the general fund of the state. There is no provision in this act that the proceeds of this special tax alone shall be applied to the payment of the principal and interest due on these bonds, nor is there any express declaration that such bonds are payable only out of the funds realized from the special beer tax, nor is there even anything in the act implying that payment of the bonds was intended to be limited solely to the proceeds of the tax.
 

 In the absence of such provision, express or clearly implied, when these bonds are actually issued and sold, they will become general obligations of this state, for the payment of which the full faith and credit of the State of Louisiana are irrevocably pledged.
 

 The Legislature of this state at the time of the enactment of the statute was undoubtedly familiar with, and took into consideration, the rule of statutory construction applied herein, and, when it authorized the issuance of these bonds for the purpose of paying bonuses to veterans of World War II, it did so with the intent and purpose that these bonds were to be general obligations of the State of Louisiana and secured by the full faith and credit of the state. This conclusion is borne out by the fact that, at the same session of the Legislature, a joint resolution, Act No. 520, was adopted, proposing a constitutional amendment authorizing the Department of Highways to construct a toll bridge across the Mississippi River at New Orleans and to issue bonds of the State of Louisiana for the purpose of financing it. This resolution was adopted and became a part of the Constitution at the same election at which Act No. 530 was ratified. In this resolution the Legislature provided that the bonds should be payable solely from the income and revenues received from the use of the bridge, and the resolution contained the following statement:
 
 “ *
 
 * * It is hereby expressly declared that the credit of the State of Louisiana is not pledged for the payment of said bonds.” In that act the Legislature made its intention clear and unmistakable, that is, that the full faith and credit of the state were not pledged to secure the payment of the obligations authorized to be issued thereunder.
 

 In the act with which we are here concerned, no such express declaration is found, and thus it clearly was the intention
 
 *905
 
 of the Legislature that the bonds issued under Act No. 530 of 1948 were to be general obligations of the state and secured by its full faith and credit.
 

 The Board of Liquidation of the State Debt therefore correctly and properly incorporated in the resolutions authorizing the issuance of the bonds and in the bonds themselves the provision that these bonds were general obligations of the State of Louisiana, for the payment of which the full faith, credit, and resources of the State of Louisiana were unconditionally and irrepealably pledged.
 

 For the reasons assigned, the judgment appealed from is affirmed.