## No. 9887.

JOHN D. FISHER VS. O. B. STEELE, AUDITOR, AND E. A. BURKE, TREASURER, OF THE STATE OF LOUISIANA.

The State of Louisiana has the inherent right to regulate her finances and to use her revenue according to her own judgment, unless restrained by any contract obligation or verbal right created by the Legislature in favor of creditors, as to any portion of the same.

Any balance remaining to the credit of one or more of the separate funds created by law, after the satisfaction of all warrants drawn against the same, is the property of the State, with full power in the Legislature to apply the same to any lawful purpose under the constitution.

Holders of warrants drawn against the general fund of 1884 have no contract or vested right to any balances for taxes due in 1883 and previous years, which were destined by Act 107 of 1884 to the general fund of 1884, sufficient to defeat the legislative will, as expressed in Act 79 of 1886, ordering certain described taxes for said years, to be placed to the credit of a special levee fund, and adopted before the collection of such taxes had been effected.

Act No. 79 of 1886 is not a special or local law within the intendment of Article 48 of the State Constitution; hence, it is not affected by the omission of the notice prescribed in that article.

Levee districts are not corporations within the scope of the prohibition contained in Article 56 of the Constitution. They are State functionaries exercising delegated powers as parts of the government. An act of the Legislature authorizing one of the levee boards to build a levee in the State of Arkansas, if necessary, to protect a portion of the State from overflow is not violative of any article, prohibition or provision of the State Constitution.

Act 79 of 1886 is not an appropriation of money within the meaning of the constitution, as it does not purport to draw any money out of the treasury. It merely directs a transfer of a contemplated revenue, from a separate fund, to which it was destined under a general act, to a special fund, and thus moves money within the treasury, but not out of it. A statute of Louisiana authorizing the construction of a levee within the State of Arkansas, with its consent, for the protection of Louisiana lands, is not amenable to

the prohibition of the second paragraph of Section 10 of Article I of the Constitution of the United States, forbidding any State, without the consent of Congress, to enter into any agreement or compact with another State. It is an exercise of no greater power than the requisition of the Governor of one State on the Governor of another, for the arrest of a fugitive from justice.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Burgess*, J.

*Kennard, Howe* and *Prentiss* for Plaintiff and Appellee.

*H. P. Wells* for Defendants and Appellants.

The opinion of the Court was delivered by

POCHÉ, J. Plaintiff has sued out an injunction to restrain the State Auditor and Treasurer from executing Act No. 79 of 1886, of the Legislature of Louisiana, entitled, "An act authorizing the tax due by the Vicksburg, Shreveport and Pacific Railroad Company to the State, for the years 1880, 1881, 1882 and 1883, to be placed to the credit of the Tensas Basin Levee District and Fifth Levee District, for levee purposes, and authorizing the parishes of Ouachita, Richland and Madison to appropriate money to said district for the same purpose."

His contention is that the taxes contemplated in the act should have been placed to the credit of the general fund of the year 1884, against which he holds warrants, aggregating the sum of $25,000, drawn by the Auditor on the Treasurer, duly issued, for the expense and purpose of maintaining the government of the State and the public institutions thereof.

That, as all the Auditor's warrants payable out of the general fund of 1883, and of previous years, had been paid or otherwise settled, the holders of warrants payable out of the general fund of the year 1884 had acquired a vested right to the taxes referred to in said Act 79 of 1886, under the provisions of the last paragraph in Section 5 of Act No. 107 of 1884, which reads: "The several funds herein provided for shall be continuous funds, and the State Treasurer shall, without legislative action, transfer any and all balances remaining in the treasury to the credit of the separate funds, after providing for the payment of all warrants drawn against said funds, for any year, to the credit of the same funds for each succeeding year," * * and that under the enactment just quoted, the warrant-holders aforesaid were vested with rights amounting to a contract in the premises.

He, therefore, charges said Act No. 79 of 1886 to be unconstitutional, null and void, for the following reasons:

1st. Because it impairs the obligations of the contract created by and between the State and himself as a warrant-holder as aforesaid.

2d. Because it divests, without compensation, his vested rights acquired under the provision of Act 107 of 1884, hereinabove quoted.

3d. Because it is a local and special law, passed without the notice required by Article 48 of the Constitution.

4th. Because it grants the funds 'of the State to a corporation, in violation of Article 56 of the Constitution.

5th. Because it applies taxes collected under the authority of the State to the construction of levees in the State of Arkansas, in violation of Articles 204, 213, 214, 215 and 216 of the Constitution.

6th. Because it is an appropriation made within five days of the final adjournment of the session of the Legislature, and (if otherwise valid) it violates Article 55 of the Constitution.

7th. Because it undertakes to use funds of the State upon some agreement or compact between the States of Arkansas and Louisiana, in violation of the second paragraph of Section 10 of Article 1 of the Constitution of the United States.

The defendants made a nominal defense, but the serious contest is made by the two levee districts intended to be the beneficiaries of the act, who, by intervention, pleaded a general denial, and set up the special plea that plaintiff has shown no intent to present the issues tendered in his petition, for the reason that he has no right to, or lien, or privilege on the tax which is the subject of the controversy.

From an admission in the record, it appears that the amount of taxes paid by the railroad company for the years 1880, 1881, 1882 and 1883 amount to $9687.62, and that the portion of the same which would have gone to the general fund of 1884, in the absence of Act 79 of 1886, amounts to $5198.34.

The District Judge pronounced the act to be unconstitutional as violative of article 55 of the State constitution and perpetuated the injunction in so far as the amount which would have gone to the General Fund is concerned. Intervenors have appealed.

Our study of the case has led us to a different conclusion from that of the District Judge, and we hold that his judgment is erroneous.

In our disposition of the numerous constitutional objections levelled by plaintiff against the Statute under discussion, we have been guided by the rule that the attempt of a private individual to control any portion of the finances of the State, and so restrain the proper officers from the performance of a plain and unequivocal duty in their admin-

29

istration of funds of the State, by invoking the aid of the judicial power to that end, and to annul and avoid as unconstitutional an act of the Legislature imposing the duty, and regulating the mode of disposing of such funds, involves the exercise of a formidable, but delicate power, which courts will be slow to assume, and will never attempt to exercise in doubtful cases.

In treating of a kindred subject, Chief Justice Marshall, as the organ of the court, in the case of Fletcher vs. Peck, 6 Cranch. 128, used the following cautious language: "The question whether a law be void for its repugnancy to the constitution is, at all times a question of much delicacy, which ought to be seldom, if ever, to be decided in the affirmative, in doubtful cases,   *   *   *   It is not on slight implications and vague conjectures that the Legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the Judge feels a clear and strong conviction of the incompatibility with each other."

Judge Cooley wrote on the same subject as follows: "The statute is assumed to be valid until some one complains whose rights it invades. *Prima facie*, and on the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well established principles of law in the conclusion that such an act is not void but voidable only ; and it follows, as a necessary legal inference from this position that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by a stranger." Cooley Constitutional Limitation, 4th Ed., p. 199.

That principle is suggestive of a grave doubt of the right of plaintiff in this case to assail the constitutionality of the statute under discussion, beyond the first two grounds contained in his petition, which present the averments that the act impairs the obligation of his alleged contract, and divests his vested rights to the proceeds of the taxes. For it appears to our minds, as a proposition, not even susceptible of controversy, that the State of Louisiana has the right, of every sovereign, to regulate her public revenue, and apply her own funds as her own judgment may suggest, unless by contract or by previous legislation, she has subjected any portion thereof to a legal

preference in favor of a creditor or contracting party. But giving the benefit of the doubt to plaintiff we shall now proceed to consider his numerous objections.

1st. As the warrants which he holds were issued "for the expense and purpose of maintaining the government of the State and the public institutions thereof" it is evident that the obligation of the State to pay his warrants does not spring from a contract. To this he does not even pretend; he sets up the provision of act 107 of 1884 as the source of his contract.

But the language of the enactment will not bear such a construction. The direction therein contained for the future guidance of the Treasurer, is to " transfer any and all balances remaining in the Treasury to the credit of the separate funds after providing for the payment of all warrants drawn against said funds, for any year, to the credit of the same funds for each succeeding year;" but the taxes due by the Railroad Company for the years 1880, 1881, 1882 and 1883, and which were paid only on the 26th of July, 1886, *never remained* in the Treasury as a balance to the credit of any fund whatever. Before the payment thereof, by act 79, approved on the 8th of July, 1886, and before the funds became liable to the effect of the general direction contained in the provision now under discussion, the Treasurer was directed to place them to the credit of another, and a special fund, nor could those funds have been contemplated by the law-maker in the provision of the act 107, 1884, for, at that time, the tax was resisted by the company as shown by litigation pending in this court, and subsequently in the Supreme Court of the United States, of which facts we must take judicial cognizance. Dennis vs. Railroad Company, 34. Ann. 954.

An argument by the State to enhance the rights of claimants to a general fund of any year by adding thereto unclaimed balances in said fund for previous years cannot be construed as a contract affecting a fund not then available and which it could not be conjectured would reach the Treasury with any certainty or in any given year.

Nor can it be envoked as a contract by a holder of warrants which had not yet been issued at the date of the legislation which is held up as a contract. Act 107 was adopted on July 10, 1884, and the sample warrant filed in this case bears the date of October 21, 1884.

2d. We are at as great a loss to conceive of the grounds on which plaintiff rests his alleged vested rights to the taxes in question for the payment of his warrants.

It is undeniable that the balances which may at any time remain in

the Treasury to the credit of any of the separate funds created by law, are the lawful property of the State of Louisiana, with full power to dispose thereof as any private individual has a right to do with his unencumbered property.

Now, what is the legal meaning and effect of a legislative direction to transfer such balances to the same funds of the ensuing year ?

It surely cannot amount to anything more than an act of gratuity on the part of the State in favor of the holders of warrants against the particular fund for the year to which the surplus is thus transferred.

What power or authority can be invoked to hold the State to the full gratuity, if she subsequently desires to decrease it to any extent, and to compel her to give the whole " pound of flesh" as " denomi- · nated in the bond ?"

A *fortiori* will no one be heard to claim, under such legislation, any vested right to a fund which had then no existence, and which therefore could not have been included in an appropriation for the benefit of any one.

3d.   It is difficult to understand how a statute directing the transfer of certain moneys from one fund to another in the treasury, can be amenable to the objection that it is a local or special law; and to thus subject it to the provisions of Article 48 of the Constitution which requires previous notice by the publication of the intention to apply therefor.   As this objection has not been argued by plaintiff's counsel, we are left to the inference that the ground may be intended to apply to the acts creating the two levee districts which are the beneficiaries of the act in question.   In that event, the argument is met by Article 46, which provides that : " The General Assembly shall not pass any local or special law on the following specified objects :   *   *   *

" Creating corporations, or amending, renewing, extending or explaining the charter thereof; *provided*, this shall not apply   *   *   * to the organization of levee districts and parishes."   But the question is no longer an open one, since the decision recently made by this Court in the case of the Planting Company vs. Green Tax Col,, in which plaintiff's counsel herein successfully maintained the reverse of their present contention on this point.

4th.   Plaintiff's counsel have not favored us with an argument in support of this fourth objection, and it is doubtless, because they shrank from the task of attempting to prove that a " levee district " created by the State as one of its functionaries, charged with the duty

of providing for the general welfare of the people by protecting them from inundation, could, by any reasoning, be considered as an association or corporation, distinct from, and independent of, the State within the intendment of the prohibition contained in Article 56 of the Constitution, when it says: "The funds, credit, property, or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private."

The funds thus applied in these two acts do not cease to be moneys of the State, but the use thereof is merely directed to a designated object, which is in itself a State function.

5. Plaintiff's counsel are also silent on this objection, which is levelled at the right of the State to build levees in the State of Arkansas. The object of the levee which the act authorizes the board to build in Arkansas, is expressed to be for the protection of said district from overflow. The object is, therefore, within the logical and reasonable purpose contemplated by the Constitution in the system of levees which it has provided for in Articles 204, 213, 214, 215 and 216.

It is passing strange that the very articles which the Legislature manifestly intended to carry out by this measure are invoked by plaintiff as obstacles to the enactment.

6th. This objection, which invokes the nullity of the act because it is an appropriation of money made within the last few days of the session, is the ground which the District Judge sustained. It must have appeared ominous to plaintiff to have seen the District Court rest its judgment on the weakest ground of his pleadings. As an argument, it is answered by the text of the act, which reads: "All the State taxes due by the Vicksburg, Shreveport and Texas Pacific Railroad Company, in and for the parishes of Ouachita, Richland and Madison, for the years 1880, 1881, 1882 and 1883, shall, when paid into the treasury of the State, be at once placed to the credit of the Tensas Basin Levee District, * * to be used in the manner now provided by law, in constructing, repairing and maintaining any and all levees in the State of Arkansas (said State consenting), that will protect said district from overflow." What portion of that language can be construed as an appropriation of money, we are at a loss to appreciate.

The real object of the act is to provide additional means for the purposes of the works to be made by the State, through that levee district, towards the preservation of the property of its people, and

to that end, certain taxes therein described, are designated as a special levee fund in addition to resources previously provided for to the credit of the board charged with the performance of that duty. The act merely directs that certain funds, when they reach the Treasury, shall be placed to the credit of a special fund, instead of being distributed ratably among the four separate funds created by law, and designated as the "General Fund," the "Current School Fund," the "Interest Fund," and the "General Engineer Fund." It partakes more of the nature of an act creating a revenue for a special purpose than one appropriating any portion of an existing revenue. It is therefore immaterial whether the act was passed and signed within the time specified in article 55 of the Constitution.

7th. The seventh objection invokes the second paragraph of section 10 of article 1 of the Constitution of the United States, which reads: "No State shall, without the consent of Congress, * * * enter into any agreement or compact with another State, or with a foreign power, or engage in war unless actually invaded, or in such imminent danger as will not admit of delay."

On reading that objection in connection with the constitutional prohibition just quoted, the mind would naturally expect a charge that the State of Louisiana was projecting a treaty of alliance with the State of Arkansas, or contemplating some joint scheme of commercial or industrial enterprise, or perhaps conspiring for the establishment of a new confederacy; but great is the relief when the mind is informed that the purpose which plaintiff resists with such a powerful shield, is merely to build a piece of levee in the State of Arkansas if necessary, and if that State does not object, or consents.

It is indeed too clear for argument that such a transaction is no more a prohibited compact between two States than is contained in the requisition of our Governor for, and the consent of another to, the capture and arrest of a fugitive from justice.

We conclude that the statute under discussion has successfully withstood all of plaintiff's attacks, which are manifestly more formidable in their number than in their intrinsic strength.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; that the preliminary injunction issued herein be dissolved, and that plaintiff's action be dismissed at his costs in both courts.