(120 So. 373)

No. 29318.

## BOARD OF COM'RS OF CADDO LEVEE DIST. v. PURE OIL CO. et al.

Oct. 29, 1928.

On the Merits Jan. 2, 1929. Dissenting Opinion Jan. 23, 1929.

Robert Roberts, Jr., and Blanchard, Goldstein & Walker, all of Shreveport, for appellant.

Thigpen, Herold, Lee & Cousin, of Shreveport, for appellee Pure Oil Co.

On Motion to Consolidate Appeals.

ROGERS, J. ▆ This proceeding is an aftermath of the case of State of Louisiana v. Standard Oil Co. et al., 164 La. 334, 113 So. 867. A few months after the decision in that case became final, the board of commissioners of the Caddo levee district instituted suit in the district court of Caddo parish against the Pure Oil Company, Standard Oil Compa-

ny of Louisiana, and other defendants, alleging that the Pure Oil Company, as lessee, had failed to deliver to petitioner, as lessor, certain royalty oil due it under the terms of the mineral lease entered into between them. The prayer of petitioner is that the defendant Standard Oil Company be ordered to pay to it the sum of $13,663.46 held by that company under the circumstances set forth in the petition, and for a judgment against the defendant Pure Oil Company in the sum of $18,625.48, with interest, "such judgment to be credited with the amount in the hands of the Standard Oil Company of Louisiana, in the event that the court should direct the payment thereof to petitioner."

On April 18, 1928, the court below sustained the plea of prescription liberandi causa of three years filed by the Pure Oil Company, and, accordingly, rejected plaintiff's demands against that defendant. From this judgment plaintiff applied for and obtained an appeal which it is prosecuting in this court under the No. 29318 of its docket.

The answer filed in the court below by the Standard Oil Company was accompanied by the deposit in the registry of the court of the amount admitted by that defendant to be due. Subsequently, the state of Louisiana intervened in the suit, claiming the fund deposited in court. The plaintiff, board of commissioners of the Caddo levee district, excepted to the intervention as failing to disclose a cause of action. On June 20, 1928, this exception was maintained and the intervention was dismissed. Thereafter a third judgment was rendered ordering the payment to plaintiff of the fund deposited in the registry of the court.

The state of Louisiana appealed from the judgment dismissing its intervention, and the transcript of appeal, which has been duly filed, bears the No. 29484 of the docket of this court. 120 So. 380.[1] No appeal has been

---

[1] Post, p. 821.

taken from the judgment directing that the fund deposited in court be paid to plaintiff.

The Pure Oil Company, appellee, has filed a motion in the appeal No. 29318 to consolidate that appeal with the appeal in No. 29484 and to treat the two transcripts as one for the purposes of appeal. This motion has been opposed by the board of commissioners of the Caddo levee district, appellant. The matter presently before us is on the motion and the opposition thereto.

The Pure Oil Company suggests, in support of its motion, that, if the appeals are consolidated, it might be in position to show that it had complied with its obligation under the lease to deliver royalty oil for account of its lessor, the board of commissioners of the Caddo levee district. The suggestion, however, involves a question of fact which must be determined primarily by the court below, in the event that the plea of prescription liberandi causa of three years filed by the Pure Oil Company and maintained by the court below shall be held by this court on the hearing of the appeal to be not well founded. If it so happens, the case will have to be remanded for a trial on the merits.

It is also urged by the Pure Oil Company that, if its motion to consolidate the appeals is granted, it can argue a plea of prescription liberandi causa of ten years, which was also filed, but not passed on, in the court below. But it is frankly admitted, in the brief filed on behalf of the company, that this court could not maintain the plea on the face of the record, if the appeals were consolidated, and that it could only remand the case for the introduction of evidence on the plea, in the event it should determine it was appropriate. It would be a useless proceeding to order the consolidation of the appeals for the purpose suggested, since this court cannot render an opinion upon any justiciable issue in advance of its decision by a court of first instance, which might never be appealed.

The motion to consolidate the appeals must be denied. They are not between the same parties, and are not dependent upon the same facts or legal principles.

For the reasons assigned, the motion filed by the Pure Oil Company, defendant and appellee, to consolidate the appeal in No. 29484 of our docket with the appeal herein, is denied.

O'NIELL, C. J. (dissenting). The two appeals which the appellee asks to have consolidated were taken from two separate judgments rendered in one and the same case. One of the appeals was taken by the plaintiff, board of commissioners, from the judgment sustaining the plea of prescription of three years, filed by the defendant, Pure Oil Company. The other appeal was taken by the state of Louisiana, from the judgment dismissing the state's intervention, for want of a right of action. That appeal is, in effect, an appeal from the judgment directing that the fund deposited in court be paid to plaintiff; for the state is claiming that fund. The possibility, or even the probability, if it be probable, that this case may have to be remanded for a trial on its merits, or for the introduction of evidence on the plea of prescription of ten years, is no reason why the two appeals should not be consolidated and the whole case disposed of at once, instead of being taken up piecemeal.

I respectfully dissent from the ruling refusing to consolidate the two appeals.

On the Merits.

OVERTON, J. This suit is one for judgment against the Standard Oil Company of Louisiana, ordering and directing it to pay to plaintiff $13,663.46, the balance of the proceeds of royalty oil, held by it, and against the Pure Oil Company for $18,625.48, with legal interest from July 1, 1921, the judgment prayed for against the latter company to be credited with the amount held by the Standard Oil Company, in the event that that amount should be ordered paid to plaintiff.

The suit is a sequel to State v. Standard Oil Co. of Louisiana et al., reported in 164 La. 334, 113 So. 867. In that case the state was seeking to recover the proceeds of seven-eighths of the oil produced on the same land as was the one-eighth, or royalty interest, involved in this case. In that case the plaintiff herein, by intervention, sought to recover the proceeds of the one-eighth royalty interest, sued for herein, but its intervention, in that respect was dismissed, because the one-eighth royalty was not involved in the main demand, as the state had sued only for seven-eighths of the total oil produced on the land.

The case comes before us by appeal from a judgment sustaining a plea of prescription of three years, filed by the Pure Oil Company, under article 3538 of the Civil Code. This article provides that actions for arrearages of rent, annuities, and alimony, or of the hire of movables and immovables, are prescribed by three years. The plea was tried on the face of the papers. We must therefore look to the petition for the facts necessary to decide the plea.

It appears from that source that on October 10, 1910, plaintiff leased to the Pure Oil Producing Company, one of defendant's ancestors in title, portions of sections 3 and 4, township 20 north, range 16 west, not already leased, lying in Caddo parish, below the banks of Ferry Lake or Jeemes bayou in ordinary stages of highwater, declared in the lease to be (presumably with that already leased) all of the lands owned by plaintiff in the subdivisions aforesaid.

When this lease was granted, a survey of the land leased was made, to serve as a basis for ascertaining the bonus the lessee was to pay, and the surveyor reported that the land contained 50.922 acres. The survey made, however, was erroneous, for it omitted

30.838 acres, which, it is alleged, belonged to plaintiff, and which, at the time of the lease, was not under lease, executed by plaintiff to others. It was the intention of plaintiff and the Pure Oil Producing Company to include in the lease, executed by them, all its unleased land in the subdivisions mentioned above, including the 30.838 acres omitted by the survey, as if the omitted area had been fully described in the lease, which intention was fully recognized by the Pure Oil Company, one of the defendants herein, in the suit of the State v. Standard Oil Co., cited supra.

Some three months after plaintiff had executed the lease, the Pure Oil Producing Company, the lessee, transferred it to the Pure Oil Operating Company, and that company, soon after the transfer, entered upon that part of the land not described in the lease, and drilled thereon three wells from which large quantities of oil were produced by it and its assignees until the latter part of June, 1921.

Although plaintiff was the owner of the area not described in the lease, but unintentionally omitted therefrom, during the entire period in which oil was produced from it, plaintiff has not received the royalty due, under the lease, from that part of the land, nor has the royalty oil been delivered to any pipe line for its account. From the wells drilled on the omitted area 137,357 barrels of oil were delivered to the Standard Oil Company of Louisiana, and the value of seven-eighths of it has been paid by that company to the Pure Oil Operating Company, and to its successor, the Pure Oil Company, the latter company being the defendant herein. As to the remaining one-eighth, or the royalty interest, the Standard Oil Company had in its possession at the time this suit was filed, $13,662.46, representing the value of the greater part thereof, holding the same for the rightful claimant thereof, but, it may be said, that, since the filing of this suit, the Standard Oil

Company has deposited this money in court, to be paid to whom it may be found to belong.

The total value of the one-eighth royalty interest, it is alleged, was $18,625.48. It is for that sum that plaintiff asks for judgment against the Pure Oil Company, which, if obtained, is to be credited with the $13,663.46, deposited in court by the Standard Oil Company, should that sum be directed by the court to be paid to plaintiff.

The hypothesis upon which plaintiff seeks to recover the sum representing the entire one-eighth royalty from the Pure Oil Company, instead of looking to that company for that part of the royalty oil delivered by it to the Standard Oil Company, and to the Pure Oil Operating Company for that part of the royalty delivered by the Pure Oil Operating Company to the same corporation, is that the Pure Oil Company, then known as the Ohio Cities Gas Company, by consolidation and reorganization, became the successor of the Pure Oil Operating Company, and liable for all its obligations; and, in the transfer by the Pure Oil Operating Company to it, in 1918, of the lease involved herein, expressly obligated itself in the transfer, under the name it then bore of the Ohio Cities Gas Company, to discharge all the terms and conditions of the lease involved in this case in the following terms, to wit:

"To have and to hold all of the said leases and leasehold estates and other property referred to or described, unto the Ohio Cities Gas Company, its successors and assigns forever, as of midnight on December 31, 1917, upon condition that the Ohio Cities Gas Company will assume and discharge all the terms and conditions of said leases and all accounts, obligations and contracts of the Pure Oil Operating Company as of said day and hour."

The issues presented by the filing of the plea of prescription herein and in the urging of it are: (1) Whether or not prescription

runs against plaintiff in an action arising out of the management and control of lands conveyed to it for a public purpose; (2) whether the prescription of three years, established by article 3538 of the Civil Code, relative to arrearages for rent, is applicable to this case; and (3) the effect of the assumption by the Pure Oil Company, then known as the Ohio Cities Gas Company, of all the terms and conditions of the lease, involved herein, which includes the payment of royalties, and of all the accounts and obligations of the Pure Oil Operating Company, as of date December 31, 1917, at midnight, on this case, as relates to the plea of prescription filed.

The theory upon which plaintiff bases its contention that prescription does not run against plaintiff is that plaintiff is an agency of the state, created for the purpose of discharging public duties.

There can be no serious question that plaintiff is a state agency, brought into existence for the purpose of discharging public duties, incumbent primarily upon the state, consisting of the protection of lands in the district from damage by flood and of the drainage of such lands, as are the remaining levee districts in the state. Section 4 of Act 74 of 1892; Const. of 1879, arts. 213, 214; Const. of 1898, arts. 238, 239; Const. of 1921, art. 16; State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830. In fact, that such districts are state agencies has been repeatedly recognized in the jurisprudence of this state. Fisher v. Steele, Auditor, 39 La. Ann. 447, 1 So. 882; Peart v. Meeker, President, 45 La. Ann. 421, 425, 12 So. 490; Koerber v. New Orleans Levee Board, 51 La. Ann. 523, 534, 25 So. 415; Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 1061, 84 So. 351; State v. Standard Oil Co., 164 La. 334, 357, 113 So. 867.

The land leased herein was conveyed to plaintiff by Act 74 of 1892 or by that act as amended by Act 160 of 1900. The certificate required by these acts was issued to plaintiff· by the register of the state land office and the auditor of state on July 6, 1901, and was promptly recorded in the conveyance records of Caddo parish. Under the terms of the acts making the grant, the title to the land was, after the issuance and registry of the certificate, vested absolutely in plaintiff. Section 9 of Act 74 of 1892; section 2 of Act 160 of 1900; State v. Standard Oil Co., 164 La. 334, 350, 113 So. 867. But the expression, "absolutely vest," used in these and similar acts, in connection with the title given, must be interpreted with reference to the nature or character of the grantee. The grantee, under these and similar acts, is an artificial person, · created for the accomplishment of public purposes, devolving primarily upon the state. The Legislature, having created plaintiff for public purposes, may revoke the grants made to it, notwithstanding the declaration as to the absolute vestiture of title, by abolishing plaintiff, or by withdrawing the grants, provided that, in doing so, it does not interfere with rights acquired by third persons. State v. Standard Oil Co., 164 La. 334, 357, 113 So. 867.

It appears, therefore, from the foregoing, that the plea of prescription presented is one pleaded against an agency of the state, created by the Legislature, to accomplish certain public purposes, devolving primarily upon the state, in bar of a demand for royalties, under a mineral lease, granted by that agency, on land conveyed to it by the state, to aid it in accomplishing those purposes. It also appears that the first question presented is whether prescription runs against an agency of the state on such a demand. If the question presented involved the loss by prescription of the mineral rights themselves, on land conveyed or certified to a levee district, under the Constitution of 1921, we should most likely hold, in view of the conclusion reached

in State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace, 161 La. 1039, 109 So. 830, that, as the levee district must retain such mineral rights, it could not lose them by prescription, for a state agency cannot lose by prescription that which it must retain, and cannot alienate. Mayor v. Magnon, 4 Mart. (O. S.) 2, 9; City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 828, 868, 66 So. 237; State v. New Orleans Land Co., 143 La. 858, 867, 79 So. 515. But no such question is presented here, but only the question as to whether the demand of a levee district for certain royalties, under a lease, granted in 1910 on land certified to it by the state in 1901, is prescribed.

Article 3521 of the Civil Code provides that "prescription runs against all persons, unless they are included in some exception established by law." We know of no exception to the general rule, above established, that includes a levee district or other state agency with reference to such a demand as the one here made. In the recent case of Board of Commissioners of Port of New Orleans v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127, the question whether prescription liberandi causa ran against a state agency was considered. The plaintiff in that case was a state agency. The cause of action was one for damages alleged to have been caused one of the wharves of the port by the defendant's negligence. It was there urged that, as the defendant was a state agency, prescription did not run against it, because prescription does not run against the state in civil matters, and that, if it did, the prescription there pleaded had been interrupted. The court held that the prescription of one year there pleaded ran against the plaintiff in the case, but also held that it had been interrupted. In passing upon the first question presented, the court said:

"In view of R. C. C. art. 3521, which declares that prescription runs against all per-

sons unless they are included in some exception established by law, we are not prepared to hold that the exception thus established in favor of the state applies to any or all other public corporations or agencies; for this constitutional provision is only the reduction to statutory form of a principle of public law already long established by universal jurisprudence, which principle has very generally been confined to actions brought by and in the name of the State itself. 17 R. C. L. 973."

Plaintiff has, and always has had, the right to sue and to be sued in its corporate name. It is a separate entity from the state, created by the state, it is true, to accomplish certain public purposes, but is nevertheless distinct from it. We think that the foregoing excerpt from the case last cited is applicable here, and we therefore rule that the prescription pleaded runs against plaintiff.

The next question to be considered is whether the prescription pleaded, which is a prescription relating to arrearages of rent, is applicable to this case. In the case of Logan v. State Gravel Co., 158 La. 105, 103 So. 526, which involved a mineral lease, as does the present case, this court said:

"Our conclusion is that a mine or quarry, or land adapted to mining or quarrying, may be leased for a certain portion of the produce of such mine or quarry, and the fact that said portion is called 'royalty,' instead of rent, is not of the least consequence. For 'rent (by whatever name called) is a certain profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use.' [Citing] King v. Harper, 33 La. Ann. 496, citing Bouv. Law Dict. verbo, 'Rent.' "

In that case, the court recognized a lessor's privilege for the unpaid royalty or rent, thus giving the lease the effect of an ordinary lease. It is true that the royalty or rent charge involved in that case was an amount

in money, based on the quantity of gravel removed from the land, whereas in this case the royalty or rent charge under the lease is one-eighth of the oil produced. That difference, however, is of no consequence, nor is the ruling in the case cited based on any such distinction. The rent charge "may consist in a certain quantity of commodities, or even in a portion of the fruits yielded by the thing leased." C. C. art. 2671. But counsel for plaintiff urge that the case cited is not applicable, because plaintiff was the owner of one-eighth of the oil produced from the moment of its production, and therefore that the obligation to deliver the one-eighth, as royalty, cannot be considered as a rent charge, but merely as an obligation to deliver property belonging to plaintiff. However, it may be noted that the case cited makes no such distinction, but expressly says that land adapted to mining may be leased for a certain portion of the produce of the mine. Moreover, the lease in this instance treats the lessee as the owner of all oil produced, and imposes upon it the obligation of delivering one-eighth of it as royalty. We think that the decision cited is applicable to this case, and that the demand for the royalty or rent is governed by the prescription applicable to arrearages of rent, which is the one pleaded here.

The last question to be disposed of is the effect of the assumption, made in 1917, by the Ohio Cities Gas Company, now the Pure Oil Company, on the prescription pleaded by it. For convenience we quote the assumption again, which is as follows:

"To have and to hold all of the said leases and leasehold estates and other property referred to or described, unto the Ohio Cities Gas Company, its successors and assigns forever, as of midnight on December 31, 1917, upon condition that the Ohio Cities Gas Company (now the Pure Oil Co.) will assume and discharge all the terms and conditions of said leases [which includes the present lease] and all acounts, obligations and contracts of Pure Oil Operating Company as of said day and hour."

We gather from plaintiff's petition, especially from articles 7, 8, and 9 thereof, that the foregoing assumption was made in effecting a consolidation of the Pure Oil Operating Company with the Ohio Cities Gas Company by which the former became merged into the latter, and that the name of the Ohio Cities Gas Company was thereafter changed, by amendment to its charter, to the Pure Oil Company, the defendant herein, pleading the prescription under consideration.

In these circumstances the Ohio Cities Gas Company, now the Pure Oil Company, became liable, by reason of the consolidation, for the obligations and indebtedness of the Pure Oil Operating Company. Wolf v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 759, 70 So. 789, L. R. A. 1916D, 1138. In fact, plaintiff alleges this, as the result of the consolidation, in article 11 of its petition.

The contention of plaintiff is that the contractual assumption, quoted above, constitutes a stipulation pour autri, and a new or additional obligation prescriptible only by ten years, and cites, in suport of its contention, Levy v. Deposito, 133 La. 126, 62 So. 599. But the case cited is not applicable here. In the present case, the Ohio Cities Gas Company, which is now the Pure Oil Company, was assuming, in effecting the consolidation and reorganization, liabilities and obligations which, by reason of the consolidation, it could not escape. In short, it was assuming, in effect, its own liabilities and obligations. To constitute a new or additional obligation, in such an instance, the assumption should be distinctly that of the debt of a third person. It will be noted also that the assumption acknowledges no specific liability, nor any liability for a specific amount, and therefore it cannot be said to change any liability into an account stated, and thereby make it, from

that standpoint, subject to the prescription of ten years.

Nothing appears on the face of the papers, on which the plea of prescription was tried, that shows that the prescription pleaded is not effective here, because of its interruption. More than six years elapsed between the time the last oil was produced and the filing of this suit. We therefore think that the trial judge was correct in sustaining the plea of prescription filed, and in dismissing, as to the Pure Oil Company, plaintiff's suit.

For the reasons assigned, the judgment appealed from is affirmed.

ROGERS, J., concurs in the decree.

THOMPSON, J. (dissenting). The opinion and decree in this case, in my humble judgment, is so fundamentally wrong and is such a break in the uniform jurisprudence of this state along several different lines that I feel compelled to give my reasons for dissenting.

First, it is wrong to apply prescription against a mere state agency administering for the state such governmental functions as are specially delegated to it by the state, when such prescription admittedly does not run against the state.

No authority is cited and none can be cited, and no logical reason is given and none can be given, to show that an action by an agent for and on behalf of his principal in a matter pertaining to the business of his principal is subject to prescription when the same action in the same matter by the principal would not prescribe.

The present court and its immediate predecessors have time and again declared that the levee boards are the mere agencies of the state, and that is conceded in the opinion handed down in this case.

In one of the recent cases it was said that these lands donated to the levee board for all intents and purposes remained the property of the state, and that the constitutional

provision declaring that the state reserve the minerals in all sales of land was alike obligatory on the levee board.

If the state had leased these lands for one-eighth royalty, would any court have held that its right to sue for that royalty was prescribed in three years in view of the Constitution which declares that prescription shall not run against the state?

If the lands for *all purposes* remain the property of the state, and no prescription would run against the state if it had leased them, and if, as declared by this court, the obligation to reserve the minerals in case of the sale of the land is binding alike on both state and levee board, we are unable to perceive how a different rule can be applied to the levee board in matters of prescription growing out of the administration of the same lands than would be applied to the state under the same circumstances.

I cannot reconcile the ruling that the constitutional exemption of the state from prescription does not apply to the levee board in its dealings with the lands in question, as consistent with the holding that the levee board must observe and is bound by the constitutional restriction on the state in case of the sale of the lands.

Second. The decision is wrong in applying prescription by analogy in violation of the fundamental and inexorable rule that statutes of prescription are stricti juris and cannot be extended by analogy from one case to another.

This court has said in a number of cases that the right to drill for oil and gas is a servitude, subject to the prescription of ten years in case the privilege of drilling is not exercised within that period.

The authorities so holding are so well known and recognized as to need no special reference.

There is little or no analogy between a servitude and the ordinary contract of letting

and hiring of an immovable. At least there is not sufficient analogy to justify the application of three years' prescription to a suit to recover the royalty realized under the contract of servitude, even should the court overrule the doctrine of nonapplication of prescription by analogy.

The effect of the decision in this case is, that if the grantee does not exercise his rights to drill under the contract within ten years, the contract is in law a servitude, and all rights thereunder are lost for nonuser, but, if the grantee does exercise his rights successfully, then the contract becomes under the law a lease, and the grantor must sue for his royalty within three years as under a contract for the hire of an immovable.

Third. The decision is wrong in holding that royalties under a mineral contract are fruits and revenues in the sense that they should be considered as rental for the exercise of the right of servitude of drilling for oil and other minerals.

In Elder v. Ellerbe, 135 La. 990, 66 So. 337, this court held that the bonus or royalty under an oil lease was not fruits and revenues.

And in Jackson v. Shaw, 151 La. 796, 92 So. 341, on rehearing, the court said:

"And the fact is that, even if he had possessed in legal as well as actual good faith, he still would owe this accounting; since oil and other minerals taken from the land by a possesser in good faith continue to belong to the owner of the land, and therefore must be restored to this owner along with the land —unlike in that respect to fruits, which pass into the ownership of the possessor in good faith as soon as reduced to possession."

In the contract of lease it was provided that, if oil is found in paying quantities, the oil company agrees to deliver free of charge to the said levee board one-eighth of all the oil produced from the wells. There was clearly no obligation on the part of the oil company to pay any money to the levee board as the price of the lease, but only one-eighth of the oil produced.

This royalty, when produced, belonged to the levee board, and the oil company became liable to the levee board, not for the price of the lease, but for what it had received for the oil belonging to the levee board, and which the company had converted to its own use. This suit is for the price of the oil received by the company for the one-eighth royalty.

I again say that it is wrong to apply the three years' prescription to such an action.

If the doctrine now laid down is adhered to, then, if a lessee of real estate under the share system sells his lessor's interest in the crop, the lessor must bring suit within three years, otherwise the right to recover the price of his own property illegally sold by his lessee is lost.

There is still another reason why the oil company should not be permitted to enrich itself at the expense of the levee board and be permitted to retain in its possession all of the oil received from the land it claimed to have leased from the levee board without the payment of one cent to the levee board. I have reference, of course, to the land on which the three wells were located.

The effect of the decisions in this litigation is to give to the Pure Oil Company all of the oil produced from the wells on the land which this court finally held was embraced in the lease of the levee board without paying said board one cent of royalty.

It must be observed that the oil in question was produced from wells located on lands which at the time were supposed to be leased from the government by Hanson and associates.

In other words, at the time the three wells were drilled, both the oil company and the levee board were ignorant of the fact that the land was not covered by the levee board lease to the oil company. All parties suppos-

ed or took it for granted that the three wells from which the oil in contest was produced were on lands covered by the Hanson lease. And for this reason the oil company did not pay the royalty over to the levee board.

It was not discovered that the wells were not on the government land until an investigation was had in the litigation in the federal court.

Thereafter the state sued for seven-eighths of the oil produced from the three wells on the theory that the land was not embraced in the levee board lease.

In that suit the levee board and the oil company made a common defense against the state—each claiming that the lands were covered by the lease, and each asked that, if the court should hold that the lands were not included in the lease, then that the lease be reformed, so as to include the said land.

In that suit the levee board demanded the $100 per acre, and the one-eighth royalty which it had not received because all parties supposed the oil had been produced under the Hanson lease.

The intervention of the levee board was dismissed as in case of nonsuit and thereafter the oil company was successful in having this court to decree that the land was covered by the levee board lease.

There can be no denial of the fact that the levee board demanded in that liitgation that the lease be reformed so as to embrace the land in question, and that the levee board recover of the oil company the bonus of $100 per acre and the one-eighth royalty. There can be no denial that the oil company acquiesced in that claim of the levee board, thereby acknowledging that, if the lease was reformed, the oil company owed the bonus and the royalty to the levee board. In fact, the oil company in its answer alleged "that if as respondent believes and alleges the levee board was at the date of the lease the owner of more acreage, then upon successfully protecting respondent in possession of the entire acreage and quieting it in its title to the oil produced therefrom, the levee board is entitled to judgment upon the basis of the true acreage at the rate of $100."

The litigating was successful in protecting the oil company in its possession of the land under the lease, and the oil company therefore under its own judicial admission owes the levee board the amount it now claims in this suit.

All of this occurred within the year immediately preceding the filing of the present suit—that is to say, the judgment of this court reforming the lease as contended for by the levee board and the oil company was rendered within the year prior to the filing of the present suit—until which time it was not known whether the land was covered by the lease or not, and until which time it was not known whether the action against the oil company was in the levee board or in the state.

The defendant oil company having in common with the plaintiff levee board succeeded in having the lease reformed so as to embrace the land from which the oil in contest was produced, and having in that common fight against the state admitted judicially that, if the lease was so reformed, the oil company would owe the levee board the bonus and royalty, and, having paid the extra bonus after the lease was so reformed, we are unable to see upon what process of law or equity the oil company can now say that the levee board should have sued within three years after the oil was produced, when as a matter of fact it was not known in whom the right of action existed until so declared by this court on the demand of the levee board and the oil company.

I therefore dissent.