(120 So. 380)

No. 29484.

BOARD OF COM'RS OF CADDO LEVEE DIST. (STATE, Intervener), v. PURE OIL CO. et al.

Jan. 2, 1929.

Percy Saint, Atty. Gen., and W. H. Thompson, Asst. Atty. Gen., for the State.

T. M. Milling and F. L. Hargrove, both of Shreveport, for appellee Standard Oil Co.

Blanchard, Goldstein & Walker, of Shreveport, for plaintiff appellee.

Thigpen, Herold & Cousin, of Shreveport, for appellee Pure Oil Co.

OVERTON, J. The present appeal is one from a judgment in the same case in which judgment was rendered this day in Board of Commissioners of Caddo Levee District v. Pure Oil Co., No. 29318, 120 So. 373,[1] though, of course, upon a different phase of the case. There the question was one purely between the levee district and the Pure Oil Company, and involved a plea of prescription. Here the question is one purely between the levee

[1] Ante, p. 801.

district and the state of Louisiana. The question involves, it may be said, the ownership of the $13,663.46, which was being held by the Standard Oil Company, as representing the balance of the royalty interest in the oil produced from the three wells on the land that was claimed by plaintiff, in the appeal this day decided, which was omitted from the surveyor's report, and which therefore was not described in the lease. This sum has been deposited in court by that company to be paid to the one who may be adjudged entitled to it.

The plaintiff herein claims that the fund should be paid to it. The state has intervened, claiming that it is entitled to the fund. Plaintiff filed an exception of no cause of action to the state's intervention, which was sustained by the trial court. It is from the judgment sustaining that exception that the present appeal is prosecuted. No one is claiming the fund except the state and the levee district.

The material facts set forth in the state's intervention are fully stated, or practically so, in the opinions on the first and second hearings in the case of State v. Standard Oil Co., 164 La. 334, 349, 113 So. 867, in which case there was in contest seven-eighths of the oil, or its value, obtained from the same land, from which the fund in contest here was derived. Because of the statement to be found in that case, it will suffice here to give a brief summary of the material facts set out in the state's intervention.

The intervention sets forth that the state is the owner of the land from which the fund in contest was derived; that on July 6, 1901, the register of the state land office and the auditor of state certified the land to plaintiff; that the certificate issued was duly recorded; that in 1919 the state filed suit, praying that the certificate, or act of transfer, to plaintiff be annulled and set aside; that plaintiff be decreed as having received

no title to the land; and that, upon this petition, a judgment was rendered on November 14, 1921, pursuant to a compromise, entered into between the state and plaintiff. The intervention then sets out in full the compromise judgment rendered. The substance of that judgment is stated in State v. Standard Oil Co., supra, on page 356 of 164 La. (113 So. 867). The petition then sets out that plaintiff, on October 10, 1910, undertook to lease the land here involved to the Pure Oil Producing Company: that the lease to that company does not include the strip. of ground from which the fund involved herein was derived; that the lease was transferred by the Pure Oil Producing Company to the Pure Oil Operating Company, and by that company to the Ohio Cities Gas Company, which by amendment to its charter has become the Pure Oil Company; that these companies unlawfully entered upon the strip of land, from which the fund involved herein was derived, drilled three oil wells thereon, and delivered the oil produced to the Standard Oil Company, the proceeds of a part of which represent the fund in contest here; that the Pure Oil Company, which succeeded to all the rights and liabilities of its predecessors, has admitted and affirmed in State v. Standard Oil Co., supra, that the land on which the three wells referred to herein were drilled was intended to be embraced in the lease granted by plaintiff to its predecessor, the Pure Oil Producing Company, and that the oil produced therefrom was produced under the lease; that the Pure Oil Company has no interest in the one-eighth of the oil produced from said wells, the greater part of which is in contest here, and is estopped from claiming any therein; and that, whether the land involved herein was included or not included in the lease granted by plaintiff, it, the state, is entitled to the fund in contest.

By the consent judgment, referred to above, rendered on November 14, 1921, pursuant to a compromise between the state and plaintiff, the act certifying the land here involved to plaintiff was annulled and set aside. In the case of State v. Standard Oil Co., supra, it was, held, when this land was certified to plaintiff, that the recordation of the act certifying it vested absolute title in plaintiff, and the court there considered the consent judgment, mentioned above, so far as relates to the land, as merely reconveying, as of the date of its rendition, the land to the state. In that case the consent judgment did not have, it was held, the effect of transferring to the state any claim that the board might have had for any act of trespass committed on the land prior to its reconveyance, and, as there was no such transfer, and since that judgment rejected any demand on the part of the state for any oil taken from the land before the institution of the suit, resulting in the compromise judgment, or for interference with any of the contracts of lease theretofore made by plaintiff, and since the seven-eighths of the oil there sued for was produced prior to the rendition of the compromise judgment, the court rejected the state's demand for the value of the oil there claimed by it.

The one-eighth of the oil, the proceeds of the greater part of which is in contest here, was delivered at the same time as was the seven-eighths that was in contest in the Standard Oil Co. Case, and went to make up the whole of the oil delivered. Therefore the reasoning by which the result was reached in that case is applicable here, and, if it is not wholly decisive of this case, it is practically so. We say practically so, because of the existence of a paragraph in the compromise judgment, relating to the equal division of certain royalties between plaintiff and the state, which gives the latter some color of right to a part of the fund here involved, and because the state's intervention is so framed

as probably to include a demand based on that paragraph. The paragraph reads as follows:

"For one-half of the funds in the hands of the First National Bank of Shreveport, Louisiana, appointed as sequestrator or depository under the stipulation entered into in this case, including the revenues from the month of October, 1921, which amounts said sequestrator or depository is directed to pay over to said board, and the remainder of said funds to be credited by said sequestrator or depository to the State of Louisiana, plaintiff herein; and for one-half of the funds accruing as royalties from all lands affected by this judgment, whether the proceeds of such royalties have been retained by the lessor or deposited in escrow."

The trial court, in passing upon this phase of the case, said:

"It is only under the latter part that the State could possibly have any claim whatever, and that only to one-half; the first part of the quoted provision refers only to funds deposited with the First National Bank, and the latter part refers only to funds accruing since the filing of the suit, which funds had not been deposited with the First National Bank, but were retained by the lessor (the levee board) or in some other way deposited in escrow. We do not know what part of the oil in the present case was produced prior to the suit mentioned in the compromise judgment, but even as to that part which was produced since that suit, the compromise judgment vested in the State one-half only of such royalties which had been retained by the lessor, or in some other way deposited in escrow, and it did not vest in the State any right of action which it might have to sue someone else for oil which had never been delivered to it or deposited in escrow. In the present case the Standard Oil Company refused to pay over to anyone the funds received by it from the oil. It

was not an escrow agent for anyone, and plainly the money held by it, in our opinion, did not come under the provisions of the compromise judgment."

The trial judge was correct in sustaining the exception of no cause of action and dismissing the state's intervention.

For the reasons assigned, the judgment appealed from is affirmed.

THOMPSON, J., dissents.

ROGERS, J. (dissenting). The decision in State v. Standard Oil Co., Ltd., 164 La. 334, 113 So. 867, is not, in my opinion, controlling of the issues in the present case. There the contest was, primarily, between the state and the Pure Oil Company. Here the controversy is wholly between the state and its agent, the board of commissioners of the Caddo levee district. The prior decision of this court was against the sovereign on the theory that the right of action against the Pure Oil Company was in the levee board and not in the state. In this case, the state is claiming from the levee board the fund which is, in effect, in its possession (the custodian, Standard Oil Company, having deposited it in court) as the result of its suit against the oil company. I think the state is entitled to the fund.

The suit which the state instituted, in the year 1919, against the levee board for the recovery of certain lands, including those involved here, forming the bed of Ferry Lake, resulted in a compromise which was, primarily, the basis of a judgment rendered by the district court for the parish of Caddo. This agreement and judgment, not having been appealed from, is the law between the parties. According thereto, the title of the state is recognized to the land in dispute; the certificate from the register of the state land office and the auditor of public accounts being annulled and set aside. It was further provided in the agreement and judgment that the contracts entered into by the levee board

for constructing levees and providing drainage were to be protected; that the leases, mineral and otherwise, resting upon the land were to be recognized as valid; that the levee board was to be permitted to withdraw $500,000 of the fund of $1,000,000 then on deposit in the First National Bank of Shreveport, as trustee, and to accumulate a further fund of $500,000 out of the future receipts from the production of oil from the wells drilled on the lands; and that all demands of the state for the revenues received by the levee board prior to the institution of the suit should be dismissed. The additional amount of $500,000 has long since been received by the levee board, and the agreement and judgment has been fully satisfied. Thereafter, under the compromise and judgment, all the revenues and royalties actually received from the sale of oil produced by the wells became the property of the state. The effect of the judgment of this court as set forth in the majority opinion is to give the levee board $13,663.46 in addition to the sum of $1,000,000 previously received in full settlement and acquittance of all of its claims to the royalties and other revenues produced from the lands in controversy between the parties. For these reasons, I respectfully dissent from the majority opinion and decree herein.