McBRIDE, Judge.
At a tax sale held in the year 1931 for unpaid State taxes for 1930, certain property in Jefferson Parish, owned by and assessed to Harvey Canal Land & Improvement Company, was adjudicated to the State of Louisiana by the Sheriff for want of a bidder. Under Acts 1934, No. 161, the tax debtor made several partial redemp-tions of certain of the property, and on August 22, 1951, effected redemption of the balance thereof from the State.
On April 24, 1944, while the property was unredeemed and in the proprietorship of the State, the then Register of the State Land Office and the then Governor, pursuant to the provisions of Acts 1880, No. 113 (now LSA-R.S. 34:346) and Acts 1916, No. 215 (now LSA-R.S. 41:1173) executed a document denominated “Right of Way Deed”, purporting to grant a right of way to Jefferson & Plaquemines Drainage District for the purpose of constructing and maintaining canals and depositing the spoil taken therefrom “on each side of said canal” on and over certain portions of the above-mentioned property of the Harvey Canal Land & Improvement Company, among which is a strip of ground in Sec. 56, T 14 S, R 24 E, west of the Mississippi River, measuring 160 feet in width and fronting on the Murphy Canal right of way and extending in an easterly direction a distance of 4,000 feet, being composed of part of Lot 17, Destrehan Division. The deed appears of record C.O.B. 202 folio 122, Parish of Jefferson.
Arnold H. Mitchel et al who purchased the property from Harvey Canal Land & Improvement Company on January 20, 1961, brought this suit against the Board of Commissioners of the Jefferson & Plaquemines Drainage District, seeking to be recognized as owners of the above-described strip of land and to have the servitude of right of way thereon declared extinguished because of ten years’ non-usage. From a judgment in favor of plaintiffs as prayed for, the defendant Drainage District has perfected this appeal.
Appellant is contending, first, that the “Right of Way Deed” dated April 24, 1944, from the State of Louisiana to the Jefferson & Plaquemines Drainage District conveyed a fee simple title to the land in question and not merely a right of way, and, hence, prescription cannot enter the case, and, second, in the alternative, that if but a servitude was conveyed, the trial judge *386 erred in holding that it was extinguished by nonusage for ten years since the tip of the strip fronting the Murphy Canal right of way had within the ten-year period been utilized by appellant for the deposit of spoil taken from said canal, which has the effect of interrupting the ten years’ prescription of nonusage as to the whole of the right of way.
(1) Appellant, created in 1912 pursuant to the provisions of Acts 1910, No. 317, has never been reorganized but has continued to operate and is now operating under the provisions of said statute as amended. Counsel in support of their argument that the deed conveyed a fee simple title to the strip of ground point to Sec. 6 of the 1910 act (see LSA-R.S. 38:1614), setting forth the power and authority of drainage districts and reading in part as follows:
“ * * * Such Drainage District shall also have the power to acquire machinery to maintain pumping plants or any machinery whatever that may be found necessary for the purpose of draining or reclaiming any of the lands of the State of Louisiana embraced within their respective drainage districts, and shall own the right of way for canals and ditches, and all sites which are acquired either by donation, purchase or expropriation, in full ownership. * * * ” (Italics ours.)
Assuming, but not deciding, that the unredeemed property of the Harvey Canal Land & Improvement Company, while in the name of the State under the tax adjudication and which could have been redeemed by the tax debtor at any time so long as title thereto remained in the State (LSA-R.S. 47:2224) was “public lands”, even if, under Acts 1880, No. 113, and Acts 1916, No. 215, the Governor and Register of the State Land Office had authority and power to grant rights of way across and through any public lands belonging to the State, said statutes do not vest said officials with the authority or power of transferring a fee simple title to the subject property to Jefferson & Plaquemines Drainage District. Both of said acts, pursuant to which the deed was confected, relate to the granting of a right of way across any public land of the State of Louisiana and not to a grant of the fee. Regardless of the provisions of Sec. 6 of Acts 1910, No. 317 that drainage districts shall own the right of way for canals and ditches in full ownership, no title to the land was transferred. We have carefully read and analyzed the Right of Way Deed, and there is nothing therein remotely indicative of a conveyance of title to the land. The deed describes the subject matter thereof thus:
“ * * * following described property, to-wit:
“Those several rights of way over and upon the property of the State of Louisiana, located in the Parish of Jefferson, Louisiana, in that certain tract of land known as Lots 17 & 18, Destrehan Division, Section 56, T 14 S, R 24 E, West of the Mississippi River, which said rights of way appear on the map showing the location of certain DRAINAGE CANALS in the Jefferson & Plaquemines Drainage District, copy of which map is attached hereto and made a part hereof, and which right of way herein granted, transferred, assigned, set over and delivered, are more particularly described as follows, * * *.
sjc * * * * *
“It is expressly understood that this grant and transfer of the above described rights of way is made for the purpose of constructing and maintaining canals on said property, and depositing the spoil taken therefrom on each side of said canal, * *
The Jefferson & Plaquemines Drainage District does not seem to have ever considered that it owned title to the land affected by the rights of way acquired as above set forth. This is made certain *387 from the testimony of Numa C. Hero, a 'Commissioner, and Engineer, and the Manager of the Drainage District, that the land has continuously been assessed for drainage taxes and that drainage taxes •were due thereon by the assessed owners up to the time of the trial. It would be difficult to believe that if the Drainage District was of the mind that it owned the land within the rights of way, it would have exacted drainage taxes from Harvey Canal Land & Improvement Company or the present owners. Moreover, Mr. Hero, throughout his testimony, referred to the rights of way as “servitudes.”
A “right of way” may consist either of the fee or merely of a right of passage and use, i. e., a servitude. But whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule “right of way” means only the servitude. John T. Moore Planting Co., Limited v. Morgan’s Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22.
The jurisprudence of the State is well settled that a conveyance of a right of way is to be regarded as a mere servitude and not as a transfer of a fee simple title of the land unless the deed itself evidences that the parties intended otherwise. Texas & Pac. Ry. Co. v. Ellerbe, 199 La. 489, 6 So.2d 556.
The general legal principles applicable here have been considered by the Supreme Court in the case of Rock Island, A. & L. R. Co. v. Gournay, 205 La. 125, 17 So.2d 8, and have been set out in the following language:
“It is well-settled in this State that in deciding whether a fee simple title to land has been conveyed or a servitude or right-of-way thereupon has been granted by a deed, the intention of the parties thereto must be determined from the stipulations in the entire instrument, with a view of giving effect to all of the provisions therein contained and thereby avoid neutralizing or ignoring any of them or treating any of them as surplusage. Noel Estate v. Kansas City Southern & G. R. Co. et al., 187 La. 717, 175 So. 468; Hunter Co., Inc., v. Ulrich, 200 La. 536, 8 So. 2d 531; Parish of Jefferson v. Texas Co. et al., 192 La. 934, 189 So. 580; Glassell v. Richardson Oil Co. et al., 150 La. 999, 91 So. 431.” '
See, also, Sohio Petroleum Company v. Hebert, La.App., 146 So.2d 530; Esso Standard Oil Company v. Texas & New Orleans Railroad Company, La.App., 127 So.2d 551.
(2) The strip in question is constituted of land termed “wooded.” It is grown up with underbrush, and the timber on it would be considered “virgin.” There exist no stumps that would serve as an indication that the land had ever been cleared or cut. The Drainage District does not pretend that it ever made active use of the property for the purposes of canals, ditches or drainage. Mr. Hero admitted this but contends that in the future there will be much need for the strip of ground. He claims some use was made of the property in that a mound of spoil dug from the Murphy Canal stands at the tip end of the strip where it touches the canal. The argument is advanced that this was a “use” of the property which interrupted and prevented the running of prescription against the servitude. The presence of the mound of spoil at the tip end of the strip would not amount to a use of the servitude, as the placing of the mud from the Murphy Canal in that position can be considered but an incident of the digging of said canal which runs over other land. Furthermore, the testimony shows that the mound of spoil retards the Murphy Canal from draining off water from the subject property. Thus, since August 22, 1951, when final redemption of the property was made from the State of Louisiana by the tax debtor up to the date of the filing of the suit, February 6, 1963, the Drainage District did not exer *388 cise any of the rights it had under its servitude, and the question not to be considered is whether the ten-year prescriptive period runs against the defendant which is an agency of the State.
LSA-Const. 1921, Art. 19, § 16, provides that prescription shall not run against the State in any civil matter unless otherwise provided in the Constitution or expressly by law.
Prescription runs against all persons unless they are included in some exception established by law. LSA-C.C. art. 3521.
Defendant is a State agency created for the purpose of carrying out public duties which are incumbent primarily upon the State, consisting of the protection of lands in the district from damage by flood and of the drainage of such lands. In Board of Com’rs of Caddo Levee Dist. v. Pure Oil Co., 167 La. 801, 120 So. 373, the Supreme Court said:
“ * * * In fact, that such districts are state agencies has been repeatedly recognized in the jurisprudence of this state. Fisher v. Steele, Auditor, 39 La.Ann. 447, 1 So. 882; Peart v. Meeker, President, 45 La.Ann. 421, 425, 12 So. 490; Koerber v. New Orleans Levee Board, 51 La.Ann. 523, 534, 25 So. 415; Atchafalaya Land Co. v. F. B. Williams Cypress Co., 146 La. 1047, 1061, 84 So. 351; State v. Standard Oil Co., 164 La. 334, 357, 113 So. 867.”
Defendant Board was created by the joint action of the police juries of the Parishes of Jefferson and Plaquemines, and its powers and authority emanate from Acts 1910, No. 317, § 6. It has the status of a body corporate in law with all of the rights and powers of a corporation, and, among other things, it may incur debts and contract obligations and sue and be sued, etc.
In a number of cases in this state, districts and boards created to carry out public duties which fall primarily upon the state have sought to have the court declare themselves exempt from prescription because of their status of agencies representing the state and performing public functions. The courts have uniformly held in cases analogous to the instant one that although the state itself is exempt from prescription, such districts and boards as state agencies are not exempt and are subject to pleas of prescription, both liberative and acquisitive. In Board of Com’rs of Tensas Basin Levee Dist. v. Earle, 169 La. 565, 125 So. 619, the Court said:
“The question whether prescription runs against a levee board was directly presented for the first time in the case of Board of Commissioners of the Caddo Levee District v. Pure Oil Co., 167 La. [801] 811, 120 So. 373, 377, and was decided adversely to the contention made by the levee board in the instant case.
“In that case it was stated that the ‘plaintiff has, and always has had, the right to sue and to be sued in its corporate name. It is a separate entity from the state, created by the state, it is true, to accomplish certain public purposes, but is nevertheless distinct from it.’
* * * * ‡
“The levee board in the instant case was vested with the power of alienation of both land and minerals during the prescriptive period of ten years before the adoption of the Constitution of 1921.
* * * * *
“There can be no mistake as to the ruling of the court in the Pure Oil Case, supra (Board of Com’rs of Caddo Levee Dist. v. Pure Oil Co., 167 La. 801, 120 So. 373). It was that prescription did run against a levee board as a. separate entity from the state, vested, with the power of alienation and with the right to sue and be sued.”
See, also, Haas v. Board of Com’rs of Red River, Atchafalaya and Bayou Boeuf *389 Levee Dist., 206 La. 378, 19 So.2d 173; Board of Com’rs of Port of New Orleans v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127.
Levee boards, drainage districts, and other state agencies, not being included in some exception established by law, and in view of the above holdings of the Supreme Court, we must declare that the defendant Board is subject to the plea of prescription interposed by plaintiffs.
LSA-C.C. art. 783 provides that servitudes are extinguished “2. By prescription resulting from non-usage of the servitude during the time required to produce its extinction.” It is provided by LSA-C.C. art. 789: “A right to servitude it extinguished by the non-usage of the same during ten years.”
The case was properly decided below, and the judgment appealed from its affirmed.
Affirmed.