

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 29, 1957

Honorable Earl Rudder                    Opinion No. WW-82
Commissioner
General Land Office                       Re: Bonds issued under
Austin, Texas                                 Article 3, Section
                                              49-b, Constitution
                                              of Texas, are gen-
                                              eral obligations of
Dear Mr. Rudder:                              the State of Texas.

        You ask whether or not Veterans' Land Bonds issued
under Article 3, Section 49-b of the Constitution of Texas,
are general obligations backed by the full faith and credit
of this State.

        Article 3, Section 49-b, Constitution of Texas,
creates a Veterans' Land Board; prescribes its membership;
endows it with the prerogative to issue installment bonds
not to exceed Two Hundred Million Dollars; sets up a fund
to receive the proceeds; provides for its expenditure on land
purchases for resale to veterans, and provides a revolving
fund feature to absorb income therefrom; and, dedicates a
sufficient amount therefrom to pay interest on the bonds and
declares that after December 1, 1965, "all monies received by
the (Board) from the sale of the lands and interest on pay-
ments, or so much thereof as may be necessary, shall be set
aside for the retirement of said additional bonds and to pay
interest thereon . . ."

        The question is whether these bonds are general ob-
ligations of the State of Texas for the payment of which the
full faith and credit of the State are pledged.

        Article 3, Section 49-b of the Constitution provides
that all "such bonds shall be executed by said Board as an
obligation of the State of Texas."

        The issuing authority, the Veterans' Land Board, was
created and exists pursuant to constitutional authority.  It
is a department of the State Government by virtue thereof and
the bonds it legally issues are obligations of the State of
Texas and not of the Board.  But it does not follow ipso facto

that the State has pledged its general power of taxation to the payment thereof.

The prime factor that constitutes a general state obligation is whether or not the taxing power of the state may be called on to service and discharge it. State v. Florida State Improvement Comm., 34 So. 2, 443, 451 (1948).

In the instant case, we have a specific fund and the board is directed to set aside therein moneys for the payment of interest and bond retirement. If the bonded indebtedness is to be paid exclusively from this fund, then they are not general obligations of the state.

In 1948, Louisiana approved a constitutional amendment relative to veterans' bonuses, to be paid by a tax on beer. Under the Louisiana scheme, a state board was allowed to anticipate tax collections and issue bonds and to pledge and dedicate the avails and proceeds of the beer tax as security therefor.

The resulting bonds came under attack when issued as a general obligation of the state. In sustaining them as such, the Supreme Court of Louisiana in State v. Board of Liquidation of State Debt, 39 So. 2d 333, 334, said:

> "It is well established that a statute, authorizing the contracting of debt on behalf of a public agency, which provides a special fund for the payment of the debt, contemplates the issuance of a general obligation to represent the debt so incurred unless it provides, expressly or by necessary implication, that payment of the debt shall be limited to the special fund."

There is no declaration in Article 3, Section 49-b, that the established fund shall alone be applied to the payment of the principal and interest of the bonds, nor is there any express provision that such bonds are payable exclusively out of the fund, nor is there any implication that payment of the bonds is intended to be limited solely to the fund. On the contrary, Article 3, Section 49-b, provides: ". . . All bonds issued hereunder . . . shall constitute obligations of the State under the Constitution of Texas."

We have previously ruled that Article 5421m, V.A.C.S., is applicable to Article 3, Section 49-b. Attorney General Opinion No. WW-2 (Jan. 14, 1957).

Section 9(c) of Article 5421m provides:

"If said Board (Veterans' Land Board), at any time during the existence of said Veterans' Land Fund, shall determine that during the following biennium there will not be sufficient moneys in said Fund to pay principal of and/or interest on said bonds which will fall due during the said following biennium, the Legislature shall appropriate from the General Fund of the State sufficient moneys to meet such obligation . . ." (Emphasis ours)

The Constitution and statutes in force and effect at the time bonds are issued will necessarily become a part of the contract.

You are respectfully advised that the bonds issued under Article 3, Section 49-b, Constitution of Texas, after approval by the Attorney General of Texas, registration by the Comptroller, and delivery to the purchaser or purchasers, will constitute general obligations of this State, for the payment of which the full faith, credit and resources of the State of Texas are unconditionally and irrevocably pledged.

## SUMMARY

Bonds issued by the Veterans' Land Board constitute, under the Constitution and Laws of this State, a general obligation backed by the full faith and credit of the State of Texas.

Very truly yours,

WILL WILSON
Attorney General

By Grundy Williams
Grundy Williams
Assistant

APPROVED:

OPINION COMMITTEE

By: H. Grady Chandler,
Chairman